## Houston & Texas Central Railway Company v. Lone Star Salt Company.

Decided November 19, 1898.

### 1. Carriers—Connecting Lines—Railroad Commission—Penalty.

A railroad company can not avoid the penalty prescribed by articles 4574 and 4575 of the Revised Statutes, for refusing to receive freight tendered by another carrier, because of differences between them as to the division of the joint freight rate established by the Railroad Commission and the requirement by the initial carrier, as a condition of delivering the freight, that the connecting carrier should sign a transfer sheet consenting to an unfair division and one in violation of the agreement between the two carriers; and the failure of the roads to have the Commission make the division of rates between them does not defeat liability for the penalty.

### 2. Same—Proviso of Statute Construed.

The proviso of article 4575, Revised Statutes, does not neutralize the preceding provision which gives a party injured by unjust discrimination by a railroad company the right to recover a penalty, so as to restrict his right of recovery to cases of extortion, but the proviso refers to a suit for penalty based upon extortion in charges, and merely makes the fact that the overcharge was unintentional a sufficient defense.

Appeal from Dallas. Tried below before Hon. Edward Gray.

*R. De Armond, Frank Andrews,* and *Baker, Butts, Baker & Lovett,* for appellant.

*McCormick & Spence,* for appellee.

FINLEY, Chief Justice.—This suit was instituted on the 22d day of March, 1897, by the Lone Star Salt Company, to recover a judgment against the Houston & Texas Central Railroad Company for alleged discrimination in refusing to haul a car of salt from Dallas, Texas, to

Bryan, Texas, on the defendant's road,—the petition charging in effect that the salt was delivered to the Texas & Pacific Railway Company at Grand Saline, Texas, for transportation to Bryan, Texas, and that the Texas & Pacific Railway Company issued a bill of lading for a through shipment of said salt between said points at the rate of 18 cents per 100 pounds, which was the rate then in force as promulgated by the Railroad Commission of Texas; that the Texas & Pacific Railway Company transported the freight to Dallas, Texas, and tendered it to the defendant, and that the defendant refused to receive the said freight for further transportation, and refused to transport the said freight to Bryan, Texas, although the said Houston & Texas Central Railroad Company, on said date and thereafter, did receive a large quantity of other freight from said Texas & Pacific Railway Company, but the defendant refused to receive the plaintiff's said freight, because the same consisted of salt, and because of differences existing between the said defendant and the said Texas & Pacific Railway Company respecting the proportion of freight to which each of said railroads was entitled, a controversy with which the plaintiff had nothing to do; that said defendant continuously refused to move said freight from the 7th day of March, 1897, up to the 19th day of March, 1897, and that said refusal on the part of the defendant company was an unjust discrimination against said shipment, and was the subjecting thereof as salt to an undue and unreasonable prejudice, delay, and disadvantage, contrary to the laws of the State of Texas; that prior to said shipment said salt had been sold to Clute & Co., to be delivered at Bryan within a reasonable time; that by reason of the delay on the part of the defendant, the delivery could not be made, the salt was refused by the parties to whom it had been sold, and that the plaintiff had to go upon the market at Dallas and sell said salt, which it did for $27.50, which was the highest price it could obtain for it, and that if it could have been delivered at Bryan it would have brought under the contract $60.65, which was a difference of $33.15, which the plaintiff sought to recover as damages. Plaintiff further alleged that said action of the defendant in refusing to receive said shipment and subjecting the same to an undue and unreasonable prejudice, delay, and disadvantage, violated the provisions of article 4573 of the Revised Statutes of the State of Texas; and also violated chapter 13 of title 94 of the Revised Statutes of the State of Texas; and thereby the defendant became liable to pay to the plaintiff a penalty of not less than $125 nor more than $500, and plaintiff here sues for the full amount of said penalty, to wit, the sum of $500, in addition to its actual damages aforesaid of $33.15.

The defendant answered by general denial, specially denied that its refusal to receive the shipment of salt was an unjust discrimination against said shipment, or that it subjected the same to any undue and unreasonable prejudice, delay, or disadvantage; but on the contrary the defendant's action was based entirely upon the refusal of the Texas & Pacific Railway Company to pay it its reasonable and proper charges for

the transportation of the shipments from Dallas to their respective destinations; that defendant was ready and willing and desirous of handling said shipments, and offered to take it upon the guaranty of the plaintiff that it would be paid, which was refused. Defendant further pleaded that on the 15th day of November, 1895, the defendant and the Texas & Pacific Railway Company entered into an agreement for the dividing of rates handled by them as connecting lines, by the terms of which shipments of the character set forth in the plaintiff's petition were to be governed by a division of rates on the basis of a mileage pro rata, with a minimum of 5 cents per 100 pounds for each line, with reference to commodity rates promulgated by the Railroad Commission of Texas, in force at the date of said agreement; that the through rate from Grand Saline, on the Texas & Pacific Railway, to Bryan, on defendant's line, as fixed by said Railroad Commission of Texas, and in force at the date of said agreement, and in force at the date of the shipment in question, and as applicable to the shipment, was 18 cents per 100 pounds, and of this amount, under said agreement, the defendant was to receive 13 cents per 100 pounds, and all business, without exception, was so hauled in conformity with the said agreement until the tendering and refusal of the shipment in question as set forth by plaintiff, at which time the defendant charges that the Texas & Pacific Railway Company demanded that this defendant accept and transport the shipment to destination for a much less compensation, to wit, 10 cents per 100 pounds, and refused to allow defendant to haul the said shipment unless it would bind itself to haul said shipment at the rate as dictated by the said Texas & Pacific Railway Company as aforesaid, and refused to pay more, or allow more, or guarantee more than said rate. Defendant charges that the Texas & Pacific Railway Company's haul on this shipment was sixty-five miles, and this defendant's haul was 165 miles, and that the division rate as agreed upon was upon a fair and equitable basis, and that any less rate to defendant would be wholly insufficient, inadequate, and incompensatory for the service, and would require it to haul the shipment at a loss. The defendant further specially pleaded that at the time the Texas & Pacific Railway Company offered it the shipment complained of, and upon the refusal of the said Texas & Pacific Railway Company to correct its transfer sheet and allow this defendant its customary and proper charges to transport same to destination, the defendant offered to plaintiff, through its agent and representative, D. C. Earnest, to accept and transport the said shipment if it would guarantee to defendant a proper division of the rate it had contracted for with the Texas & Pacific Railway Company, which proposition was declined by the plaintiff.

There were certain demurrers filed to the defendant's answer, which were overruled.

Upon the trial of the cause on its merits, on November 25, 1897, by the court without a jury, a judgment was rendered against the defendant for the sum of $500, as the penalty sued for, with interest from the date

of the judgment. The defendant excepted, gave notice of appeal, filed its appeal bond, and brings the cause to this court. No conclusions of fact and law were filed by the court.

The facts are uncontradicted, and show:

First. That the plaintiff had sold the salt to Clute & Co., at Bryan, to be shipped from Grand Saline, Texas, to Bryan, Texas, at a net price to the plaintiff of $60.65, for which shipment of salt the Texas & Pacific Railway Company executed its bill of lading at Grand Saline, Texas, to the plaintiff for said salt, to be delivered at Bryan, Texas, at the rate of 18 cents per 100 pounds, said shipment being to the order of the Lone Star Salt Company, notify Clute & Co., at Bryan.

Second. On the 19th day of March, 1897, Clute & Co. notified the plaintiff that they would not take the salt, and declined to receive it, on account of the delay in shipment, the shipment having been billed at Grand Saline on the 6th day of March, 1897, and having reached Dallas and being tendered to the defendant on the 7th day of March, 1897. The said salt was received by the defendant on the 7th day of March, 1897, and unloaded by the defendant into one of its own cars before any question respecting the division of the through rate had arisen between the defendant and the Texas & Pacific Railway Company.

Third. On the 20th of March, 1897, the plaintiff sold the salt in Dallas, Texas, for $27.50.

Fourth. At Bryan, Texas, the plaintiff was selling salt in competition with Liverpool and New Iberia. The Liverpool shipments would come by water to Galveston, thence to Houston, and over the defendant's line to Bryan. The New Iberia salt would come over the Southern Pacific Railway to Houston, Texas, thence over the defendant's line to Bryan, the defendant's line being the only railroad reaching Bryan.

Fifth. After the differences arose between the Texas & Pacific Railway Company and the defendant respecting the division of the rate, a conversation occurred between plaintiff's agent, Earnest, and defendant's assistant general freight agent, Berry, and set out in the testimony of Earnest, as follows: "I had some talk with Mr. R. D. Berry, at Dallas [Mr. Berry is the assistant general freight agent of the Houston & Texas Central Railway Company], about this shipment in question. I asked Mr. Berry if he was going to take the salt—take the car out. He said, 'Yes, if you will guarantee me my proportion of the division.' I said I didn't know what his proportion is, as that was a matter between him and the Texas & Pacific Railroad. He then said he declined to take it."

Sixth. The Texas & Pacific Railway Company declined to allow the defendant more than 10 cents per 100 pounds for handling said salt from Dallas, Texas, to Bryan, Texas, and the defendant insisted upon a division of 13 cents per 100 pounds, allowing to the Texas & Pacific Railway Company 5 cents per 100 pounds.

Seventh. The plaintiff introduced in evidence circular No. 11 of the Railroad Commission of Texas, dated January 6, 1896, as follows:

"It is ordered by the Railroad Commission of Texas that the following rules and regulations shall be, and they are hereby, established to govern the reception, transportation, and delivery of loaded cars from point to point on railroads within the State of Texas:

"1. Every railroad company operating a railroad between points within the State of Texas shall receive, when tendered to it by a shipper at a station on its line, every loaded car intended for transportation over its line, and thence to a point on any connecting line, of railroad. Having received from a shipper a loaded car destined to a point on its line, the company so receiving such loaded car shall forward and haul same over its line to destination; and having received from a shipper a loaded car destined to a point on a connecting line, the company so receiving such loaded car shall forward and haul same over its line to its junction with the next connecting line, to which it shall at such junction deliver the same for further transportation.

"2. Every railroad company operating a railroad between points within the State of Texas shall receive, when tendered to it by a connection at a place of junction of their tracks, every loaded car intended for transportation over its line to a point on its line, and also every loaded car intended for transportation over its line and thence to a point on any connecting line. Having received from a connection a loaded car destined to a point on its line, the company so receiving such loaded car shall forward and haul same over its line to destination, and having received from a connection a loaded car destined to a point on any connecting line, the company receiving such loaded car shall forward and haul the same over its line to its junction with the next connecting line, to which it shall deliver same for further transportation.

"3. Connecting lines, as used in this circular, are two or more lines connecting with each other by crossing each other's tracks, or otherwise, and forming a continuous rail route between the initial and terminal points of a shipment; and a connection, or connecting line, is any one of said two or more lines.

"4. The junction of two railroads, as used in this circular, is the place at which they cross each other's tracks, or are otherwise connected.

"5. Nothing herein contained shall affect the rules and regulations now recognized and enforced by the railroad companies of this State in respect to charges for car mileage upon loaded or empty cars."

Eighth. The car in question was put upon the delivery track for delivery to the Houston & Texas Central Railroad Company at 8:25 a. m., March 7, 1897, and was pulled off of the connection by the defendant and unloaded into one of the defendant's cars before the controversy respecting the division of the rate arose between the defendant and the Texas & Pacific Railway Company.

Ninth. After the car of salt was received by the defendant company and unloaded into one of defendant company's cars, the Texas & Pacific Railway Company demanded of the defendant, through a tender of a

transfer sheet, that the through rate should be ultimately divided between the Texas & Pacific Railway Company and the defendant upon the basis of 8 cents to the Texas & Pacific Railway Company and 10 cents to the defendant. This the defendant declined to accede to, and in turn demanded a basis by which the defendant should receive 13 cents, and the Texas & Pacific Railway Company 5 cents of the through rate.

Tenth. When first delivered, and before any question was raised about the rate, the car was unloaded by the Houston & Texas Central Railroad Company into one of its cars, and when the question of division was presented by the transfer sheet, which is by custom signed by the receiving company, the Houston & Texas Central declined to accept and sign for it, and returned and reloaded the salt into the Texas & Pacific car. This occurred because the cars would be set on the transfer track by the Texas & Pacific, chalk-marked "H. & T. C." The Houston & Texas Central Railroad Company would then take charge of it and transfer it into the cars, and when the transfer sheet came it would show the rate, and the actual transfer would be made before the Houston & Texas Central would know what the freight was, or its destination, or what the proportion would be for the freight, or the proportion of the freight that would be claimed by the other road.

Eleventh. There was no evidence offered to show that any rate of division between the two roads upon such shipments had ever been established by the Railroad Commission of Texas.

Twelfth. The defendant in its answer admitted and specially pleaded that the Commission had fixed the through rate, which was in force at the date of shipment, of 18 cents per 100 pounds on salt between Grand Saline, Texas, and Bryan, Texas.

Thirteenth. The salt was shipped in Texas & Pacific car No. 6650 from Grand Saline to Dallas. This car was delivered to defendant on March 7, 1897, at 8:25 a. m.

*Opinion.*—The first and second assignments of error question the correctness of the action of the court in excluding evidence. The defendant offered to prove by witnesses, Berry and Gilette, that there was an agreement between the Texas & Pacific Railway Company and the defendant railway company for a division of the through rate of 18 cents per 100 pounds from Grand Saline, on the Texas & Pacific Railway, and Bryan, on defendant's line, of 13 cents to the defendant and 5 cents to the Texas & Pacific Railway Company, which was operated and worked under by the two companies until the shipment in question, and that the reason the defendant refused the shipment was because the Texas & Pacific Railway Company made the transfer sheet to read, 10 cents per 100 pounds to the defendant and 8 cents to the Texas & Pacific Railway Company, and refused to correct it in accordance with the demand of the defendant fixing the division at 13 cents for the defendant and 5 cents for the Texas & Pacific Railway Company.

The evidence was objected to as irrelevant and affording no defense to the cause of action. The court sustained the objection and declined to admit the evidence. The trial judge in allowing the bills of exception states that it had already been shown that the defendant took charge of the salt and unloaded it out of the Texas & Pacific Railway Company's car into one of its own before the difference or dispute arose as to the division of the freight between the two companies, and as it had possession of the freight, the facts sought to be proven would not excuse the defendant from transporting the freight or relieve it of liability for failure to do so. Subdivision 5 of article 4562, Revised Statutes, gives the power and makes it the duty of the Railroad Commission to fix and establish joint rates of freight for connecting lines of railroad. Subdivision 6 of the same article provides that when the connecting lines fail to agree upon a fair and just division of such joint freight charges, the Commission shall fix the pro rata to be received by each of the lines. Article 2574, Revised Statutes, defines unjust discrimination. Section 2 of the article reads: "Every railroad company which shall fail or refuse, under such regulations as may be prescribed by the Commission, to receive and transport without delay or discrimination the passengers, tonnage, and cars, loaded or empty, of any connecting line of railroad, and every railroad which shall, under such regulations as may be prescribed by the Commission, fail or refuse to transport and deliver without delay or discrimination any passengers, tonnage, or cars, loaded or empty, destined to any point on or over the line of any connecting line of railroad, shall be deemed guilty of unjust discrimination; provided, perishable freights of all kinds and live stock shall have precedence of shipment." Section 4 of this article provides a penalty recoverable by the State. Article 4575, Revised Statutes, is as follows: "In case any railroad subject to this chapter shall do, cause to be done, or permit to be done, any matter, act, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing herein required to be done by it, such railroad shall be liable to the person or persons, firm or corporation, injured thereby for the damages sustained in consequence of such violation; and in case said railroad company shall be guilty of extortion or discrimination as by this chapter defined, then, in addition to such damages, such railroad shall pay to the person, firm, or corporation injured thereby a penalty of not less than $125 nor more than $500, to be recovered in any court of competent jurisdiction in any county into or through which such railroad may run; provided, that such road may plead and prove as a defense to the action for said penalty that such overcharge was unintentionally and innocently made through a mistake of fact; provided, that any such recovery as herein provided shall in no manner affect a recovery by the State of a penalty provided for such violation." It will be seen that the statute declares it to be an unjust discrimination for one connecting line to fail or refuse to receive and transport without delay or discrimination the freight of any connecting line of railway.

The statute also gives to the person injured by such unjust discrimination the right to recover the penalty pronounced against such unjust discrimination.

It is first insisted, that if the companies had agreed upon a division of the joint rate fixed by the Commission, as alleged and offered to be proven, that appellant company was not bound to receive and transport the freight in question for a less compensation than its agreed pro rata, and that it did not incur liability to the statutory penalty by refusing so to do. In this case it was shown that the car containing the salt was transported to Dallas by the Texas & Pacific Railway Company, and there the car was placed upon a connection track between the Texas & Pacific Railway line and the Houston & Texas Central line and marked for transportation over the latter line. The employes of the latter line moved this car onto its own track, and finding the car out of repair, reloaded the salt into its own car. After this was done, the Texas & Pacific Railway Company presented its transfer sheet to the Houston & Texas Central Railway Company to be signed. The transfer sheet seems to have been intended as a receipt for the freight by the receiving carrier, and also showed the rate of freight charges and the division thereof between the carriers. In this instance it showed the rate to be 18 cents, and the division to be 8 cents to the initial line and 10 cents to the receiving line. This division was objected to by the receiving carrier, and the initial carrier refusing to change it upon the transfer sheet, the former declined to sign the transfer sheet, and reloaded the salt back into the car of the latter, placed it back upon the track from which it had been taken, and refused to transport it. It is manifest that it is intended by the statute to so regulate the traffic of connecting lines that the shipper may deal with them as a continuous line of transportation. To this end a joint rate of charges is provided for and the method pointed out for a just division of the charges between the lines—it may be agreed upon by them, or in case they fail to agree, the Commission may fix the pro rata of each line. The joint rate having been fixed by the Railroad Commission, the shipper had only to deal with the initial carrier, and the statute fixed upon the connecting line the duty to receive and transport the freight without delay or discrimination, under penalty, recoverable, as we have seen, by the injured party. The initial carrier had no right to demand more than its share of the freight charges as determined by the agreement between the companies, if there was such an agreement, and not having the right to make an excessive demand, it had no right to ask that the connecting line should sign and agree to a transfer sheet which stated the division of the freight charges unfairly to the connecting line. While this is true, it does not necessarily follow that the wrongful demand of the initial carrier absolved the connecting line from its statutory duty to receive and forward the freight. The connecting line being under statutory duty to receive and forward the freight, with heavy penalty fixed for failure or refusal, it is not believed that it would be bound by the

statement of the division of the freight charges contained in the transfer sheet, if signed under protest as to that matter. Must shipments await the voluntary adjustment of all differences arising between connecting carriers and the interests of the public suffer, or must the shipments go forward and such differences between the carriers be settled in some other way than refusing to transport the freight? We think a fair construction of the statute requires the answer that the freight must be received and transported, and not be halted and delayed by connecting lines until the differences between the carriers are voluntarily and satisfactorily settled among themselves. Under this construction neither the public nor the connecting lines of railway would suffer. The freight would go promptly forward to its destination, while the carriers have open to them ample means of protection and remedy against unlawful demands of the one upon the other. It follows from this view of the law that the evidence offered did not tend to establish a defense and was properly excluded. Had the initial carrier refused to deliver the freight to the connecting line until it signed a transfer sheet which stated the division of the freight charges in terms of unfairness to the connecting line, we would not feel disposed to hold that its refusal to sign such a transfer sheet was a failure or refusal to receive and transport the freight in contemplation of the statute. In other words, the initial carrier would not have the right to attach unlawful conditions to its delivery of the freight. It has no right to bring the connecting carrier to its terms in that way; neither has the connecting carrier the right to force the initial carrier to terms by refusing to receive and transport the freight. They must appeal to the Commission or the courts of the county, if they can not agree, and must not make the public suffer by undertaking to coerce adjustments through the means of stopping and delaying shipments before they reach their destination. The Commission having fixed the joint rate, the companies must agree, or have the Commission make the division. Their failure in this regard should not be allowed to affect the rights of the public, and hence the contention that the judgment was not justified because the evidence did not show that the Commission had fixed the division of the charges between the companies, is not tenable.

It is further urged that the facts shown do not constitute unjust discrimination as denounced by the statute. The statute in plain terms declares that a failure or refusal of a connecting carrier to receive and transport the tonnage of another connecting carrier is unjust discrimination. To sustain the contention would contravene the very terms of the statute.

It is also contended that the State alone can recover the penalty for such unjust discrimination, and that the shipper can recover a penalty only in case of extortion, overcharge. We have heretofore seen that article 4575, Revised Statutes, gives the party injured by discrimination the right to recover the penalty fixed by statute. The proviso in that article does not neutralize that which precedes and confers the right. The pro-

viso merely declares a sufficient defense to be shown where the overcharge was unintentionally and innocently made through mistake of fact, and manifestly refers to a suit for penalty based upon extortion in charges.

There are no other questions raised which we think necessary to discuss, and finding no error, the judgment will be affirmed.

*Affirmed.*