QUANAH, A. & P. RY. CO. v. R. D. JONES LUMBER CO. (No. 790.)

(Court of Civil Appeals of Texas. Amarillo. May 22, 1915. Rehearing Denied June 19, 1915.)

1. COURTS ⟺472 — EXCLUSIVE JURISDICTION —STATUTORY PENALTY.

Rev. St. 1911, art. 6670, giving the state a right of action for penalties, for unjust discrimination by railroads, and article 6671, authorizing any person injured by any discrimination to sue for a penalty, make a distinction between a penalty recoverable by the state and a penalty recoverable by a person injured; and Const. art. 5, § 8, giving the district court exclusive jurisdiction of suits by the state for penalties, does not control the jurisdiction of an action by a person injured for a penalty, and where the penalty is within the jurisdictional amount of the county court it has jurisdiction of an action by a person injured.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 442, 451, 459, 465, 619, 1199–1202, 1204–1224, 1247–1259; Dec. Dig. ⟺472.]

2. PLEADING ⟺291—VERIFICATION—ACTION ON BILL OF LADING.

A petition in an action against a carrier for nondelivery of freight to a connecting carrier, which alleges that plaintiff delivered freight to the carrier for through shipment, and that after receiving the freight the carrier issued its bill of lading therefor, wherein it contracted to convey the freight as a through shipment, avers that the bill of lading was in writing, as required by Rev. St. 1911, art. 710; and the carrier, failing to deny under oath its execution, as required by article 1906, subd. 8, and article 3710, may not question it.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 864, 865, 866½–879; Dec. Dig. ⟺291.]

3. CARRIERS ⟺185 — NONDELIVERY OF FREIGHT—EVIDENCE—ADMISSIBILITY.

Where, in an action against the initial carrier for nondelivery of freight to the connecting carrier, there was evidence that the initial carrier held the freight for payment of charges by the connecting carrier because of its financial condition, until the shipper paid the freight, and that the initial carrier accepted the freight with knowledge that it had an unsettled claim against the connecting carrier, and that the shipper was not notified, evidence of the dispute between the two carriers was properly excluded.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 835–850; Dec. Dig. ⟺185.]

4. CARRIERS ⟺174 — TRANSPORTATION OF FREIGHT—BILL OF LADING—CONSTRUCTION.

A bill of lading which stipulates that the owner or consignee shall pay the freight charges, and if required shall pay the same before delivery, and that the initial carrier shall carry the freight to its usual place of delivery at its destination, if on its road, otherwise to deliver to another carrier on the route to destination, does not impose on the owner the duty to pay charges before the initial carrier would deliver the freight to the connecting carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 747–765; Dec. Dig. ⟺174.]

5. COURTS ⟺184—COUNTY COURT—PRACTICE —VERDICT—REQUISITES.

Rev. St. 1911, art. 1977, providing that the verdict shall be in writing and signed by the foreman, and where, pending trial, any juror may be disabled, and the verdict is rendered by the remaining jurors, the verdict shall be signed by all of the remaining jurors, does not apply to jury trials in the county court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 409; Dec. Dig. ⟺184.]

6. TRIAL ⟺345 — VERDICT — SIGNATURE TO VERDICT—OBJECTIONS.

Where no exception was made to a verdict signed by the foreman alone until after the jury was discharged, an objection that the verdict was not signed by all the jurors came too late.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 816–820; Dec. Dig. ⟺345.]

7. CARRIERS ⟺20—STATUTORY REGULATIONS —PENALTIES—LIABILITY.

The penalties imposed by Rev. St. 1911, arts. 6670, 6671, on railroads guilty of unjust discrimination, are recoverable for nondelivery of tonnage freight to connecting carrier, as well as for nondelivery of car load shipments.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 39–49, 133, 927; Dec. Dig. ⟺20.]

8. CARRIERS ⟺123 — DELIVERY — DELIVERY OF FREIGHT—SPECIAL DAMAGES.

Where a carrier of roofing was informed, after the arrival of the goods at the end of its line for delivery to a connecting carrier, that the material was desired for the protection of lumber, but the carrier thereafter delayed delivery, and the lumber was thereafter damaged by rains, the carrier was liable for the loss sustained.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 506, 507, 539–543; Dec. Dig. ⟺123.]

Appeal from Motley County Court; C. B. Whitten, Judge.

Action by the R. D. Jones Lumber Company against the Quanah, Acme & Pacific Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

D. E. Decker, of Quanah, and G. E. Hamilton, of Matador, for appellant. T. T. Bouldin, of Matador, for appellee.

HUFF, C. J. This suit was instituted in the county court of Motley county, by the appellee, R. D. Jones Lumber Company, of which R. D. Jones is the sole owner and proprietor, against the appellant, the Quanah, Acme & Pacific Railway Company, for damages alleged to have been sustained by reason of the failure to deliver a shipment of roofing to the Motley County Railway Company, a connecting carrier with appellant, in accordance with the terms of contract entered into, and in violation of articles 6670 and 6671, R. C. S., and also to recover the penalty prescribed by the statutes.

In the first paragraph of plaintiff's petition it is alleged that he was engaged in the buying and selling of lumber in the town of Matador, and that the defendant was engaged in the business of a common carrier; that the Motley County Railway Company was a corporation, and engaged in the business of a common carrier from Matador, Motley county, Tex., to Matador Junction, in said county and state. The defendant admits as true the allegations contained in paragraph 1 of the petition.

Paragraph 2 of the petition alleged that at Matador Junction the defendant's road and the Motley County Railway Company's road intersected with each other, making a connecting line of railroad from Matador Junction to Matador, over which all freight and passengers might be interchanged and transferred; that the two said roads have been interchanging business with each other at said point of intersection, and transferring both passengers and freight delivered by one road to the other. The defendant admits the allegation in this paragraph.

The allegations are to the further effect that the appellee delivered to appellant, at Paducah, Tex., on appellant's line of road, the shipment of roofing to be transported over its line and that of the connecting carrier to Matador, Tex., and alleges the failure and refusal to deliver to the connecting carrier at Matador Junction the shipment to be transported to the town of Matador, and consequent damages, and prays for the penalty prescribed by the statute.

The case was submitted to the jury upon special issues. The jury found that the railway company entered into a contract with R. D. Jones Lumber Company to deliver a shipment of roofing to the plaintiff at Matador, Tex., and that the railway received the same for shipment at Paducah, for transportation to Matador, Tex.; that it transported the shipment to Roaring Springs, and refused to deliver the same to the Motley County Railway Company at Matador Junction, and that it held the same before delivering about 14 days; that the plaintiff gave the agent of the defendant at Roaring Springs notice of the purpose for which the roofing was to be used by the plaintiff, about the 15th of August, 1914, and that the plaintiff's lumber was damaged by the failure to deliver the shipment to the Motley County Railway Company, to be by it delivered to the plaintiff at Matador, to the amount of $260; and they assessed the penalty of $350 against the defendant, in favor of the plaintiff, for the railway's failure to deliver the roofing to the Motley County Railway Company, to be delivered to the plaintiff at Matador, Tex., in accordance with the contract. Judgment was entered in accordance with the verdict. There is evidence in the record tending to support the verdict. Other facts necessary to the understanding of the case and the several assignments will be referred to in the course of the opinion.

[1] The first assignment urged is that the trial court was in error in overruling appellant's second special exception, for the reason that the suit was one to recover a penalty and that the district court had exclusive jurisdiction thereof. Article 5, § 8, of the Constitution gives the district court exclusive jurisdiction "in all suits in behalf of the state to recover penalties, forfeitures and escheats." Article 1705, R. C. S. For "unjust discrimination," article 6670, R. C. S., gives a right of action to the state of Texas to recover a prescribed penalty. Article 6671, R. C. S., gives to the person, firm, or corporation injured by extortion or discrimination, as defined in that chapter, the right to sue for a named penalty, to be recovered in any court of competent jurisdiction. The appellant cites the case of Hill County v. Atchison, 19 Tex. Civ. App. 664, 49 S. W. 141, as sustaining its proposition. That court held that the suit by one of the municipal subdivisions of the state for a penalty in which the people of the state were more or less interested would be a suit in "behalf" of the state, and therefore should be brought in the district court, citing the case of State v. Eggerman, 81 Tex. 569, 16 S. W. 1067. A cause of action is given to any person injured by such discrimination, and while this suit is for a penalty, it is not on behalf of the state, but for the injured party. One article gives the right to sue for the state for one penalty, and the other article to the injured party to recover a different penalty. We think a clear distinction is made by the statutes. We do not believe the provision of the Constitution quoted controls the jurisdiction in this case, and the assignment will be overruled.

The second assignment is that the court erred in overruling the fifth special exception to the petition. We think the petition alleges facts sufficient to show a violation of the statute, entitling the plaintiff to recover the penalty prescribed. The assignment will be overruled.

[2] The third assignment complains at the action of the court in admitting the bill of lading without proving its execution. In the fourth paragraph of the petition it is alleged that the plaintiff delivered $265 worth of galvanized roofing, consisting of 260 pieces, to the defendant railway company at Paducah, Tex., to be delivered to the plaintiff at Matador, Tex., and that the defendant agreed with plaintiff to deliver the freight to plaintiff at Matador, Tex., for through shipment, the freight charges to be paid upon delivery. The shipment was to be made over the defendant's road to Matador Junction, on its line of road, and from there to be delivered to the Motley County Railway Company, to be carried by that road to Matador, Tex.; that after receiving the goods at Paducah, Tex., defendant issued its bill of lading therefor, where it contracted and agreed to convey the shipment of goods as a through shipment, to be delivered to plaintiff at Matador, Tex., and that when the shipment reached the Junction defendant, notwithstanding the agreement and in violation of its contract, refused to deliver the shipment to the Motley County Railway Company at the Junction, but carried the same to Roaring Springs, and held the same at that point from the 13th to the 27th day of August, 1914.

The railway company, in the fifth paragraph of its answer, admitted as true the allegation in paragraph 4 of the petition, except it alleges it has no knowledge as to the value of the goods, and denies "the allegation that the defendant contracted to transport said shipment and collect the freight charges on delivery at Matador," and denies that it violated its contract of shipment, or it wrongfully, etc., refused to deliver said merchandise to Motley County Railway Company; on the contrary, it is alleged that on August 17, 1914, plaintiff paid the freight charges due defendant, and the freight was on that day delivered to the Motley County Railway Company. We think the petition alleges that plaintiff's cause of action was based in part upon a written instrument, the execution of which is not denied under oath. While it is not stated in terms that the bill of lading was in writing, we believe under the law it was substantially so alleged, and that its execution should have been denied under oath. The statutes in this state require that bills of lading be in writing, and a failure to so issue and deliver a bill of lading is penalized. Article 710, R. C. S.; Schloss v. Railway Co., 85 Tex. 601, 22 S. W. 1014. The execution of the bill of lading was not denied under oath, and was admissible in evidence without the necessity of proving its execution. Article 3710, and article 1906, subdivision 8, R. C. S.; 3 Willson, Civ. App. § 187; Railway Co. v. Tisdale, 74 Tex. 8, 11 S. W. 900, 4 L. R. A. 545.

[3] The fourth and sixth assignments relate to the exclusion of the evidence of H. D. Bishop to the effect that the reason the shipment in question, as well as like shipments, was held at Roaring Springs, and not delivered to the connecting carrier, was because a difference had arisen between defendant railway company and the Motley County Railway Company in regard to the division of freight earnings; that just prior to the shipment the two roads had a settlement, and that the Motley County Railway Company owed appellant about the sum of $700; that the witness, for his company, had made drafts therefor, which had been returned unpaid, and for that reason the defendant company required all freights to be prepaid, and that the shipment in question was not so delivered because the freight charges were not paid; and it is urged the court erred in excluding the testimony of A. Campbell and J. W. Gaines to the same effect, and further that the Motley County Railway Company had no rolling stock, equipment, or other property subject to statutory execution, save and except its roadbed and track, etc. The exception urged and sustained was that the testimony was ex parte, and a matter only between the two railroad companies, and had nothing to do with the suit.

In considering the statement of facts and bill of exception, it is difficult for us to determine what was admitted and what excluded. Bishop did testify that the reason appellant held the freight was for the purpose of collecting some money from the Motley County Railway Company, which appellant road was claiming. The testimony is also undisputed that the appellant held the shipment at Roaring Springs until the appellee paid the freight over its line to that point, and when it was so paid the freight was delivered to the Motley County Railway Company. It is not alleged by appellant in its answer that the reason the shipment was held was because of any dispute between the roads, or that the delivering road had no property out of which the freight charges could be made or collected. It is simply averred that it refused to deliver the freight until its freight charges were paid and so notified appellee, and when the freight was paid to it the shipment was delivered to the Motley County Railway Company.

We do not think the court was in error in excluding the testimony with reference to the dispute between the two roads. We think the interests of the public require that common carriers settle their disputes either by agreement in the courts or before the Railway Commission. Shippers should not be subjected to delay and damage because of these disputes, and the evident policy of the statute was to require the railroads to adjust their differences without harassing shippers with their disputes. Railway Co. v. Lone Star Salt Co., 19 Tex. Civ. App. 676, 48 S. W. 622; Railway Co. v. Lone Star Co., 26 Tex. Civ. App. 531, 63 S. W. 1025.

Article 6614, Revised Civil Statutes, gave appellant ample protection. It made Motley County Railway Company a trustee for all sums of money received by it for the joint interchange between them, giving therefor a a preference lien on the property and franchise for such sums of money so held by it for appellant; but if it shall be conceded that, owing to the financial condition of the Motley County Railway Company, under some circumstances appellant would have the right to hold the freight until its charges were paid, we do not think under the facts of this case the holdings of the freight could be so justified. Before or at the time appellant accepted the freight for shipment at Paducah, it had the right to demand the prepayment of the freight. This appellant did not do, but accepted the shipment and executed its through bill of lading to Matador, Tex., on the line of the Motley County Railway Company.

[4] The eighth clause of the bill of lading provides:

"The owner or consignee shall pay the freight charges accruing on said property, and, if required, shall pay the same before delivery. If, upon inspection, it is ascertained that the articles shipped are not those described in this bill of lading, the freight charges must be paid upon the articles actually shipped."

The shipment was consigned to R. D. Jones Lumber Company, destination Matador, Tex., and it was further agreed, as evidenced by the bill, that appellant was to carry to its usual place of delivery at its destination, if on its road; otherwise, to deliver to another carrier on the route to said destination. We do not think the contract is subject to the interpretation that before the delivery to the connecting carrier the appellant could demand its freight and hold the same before it would deliver the shipment thereto. Clearly the statutes and laws of this state, providing for the protection of carriers in their freight, do not authorize any such construction. It would be a very great hardship on the shipper if any such rule prevailed. The carrier, under such rule, could stop the shipment anywhere in transit and demand its freight, however much delay and inconvenience it would be to the shipper to pay at that time or place. Our Supreme Court has, in passing on these statutes involved in this suit, and in answer to substantially the same contention as here made, settled the question:

"The railroad company might have refused to receive the cotton or to transport it, except upon payment of freight; but when it received the freight there was a waiver of payment." Railway Co. v. Hannay, etc., 104 Tex. 603, 142 S. W. 1163.

The facts in this case show that before appellant accepted the shipment it knew that it had pending the unsettled claim against the Motley County Railway Company. It did not allege or prove that it notified the shipper that such was the condition, but, on the contrary, contracted to deliver the goods to the connecting carrier, to be transported to its destination, Matador, to be delivered to the consignee, at which time before delivery the charges could be paid. Under such circumstances we think the testimony offered was wholly irrelevant to any issue presented by the pleadings.

The fifth assignment of error is to the remarks of the court in excluding the testimony. Under the explanations made by the court, we think they were not calculated to injure appellant, and did not exceed the discretion on the part of the court, or amount to a comment upon the evidence, and the assignment is therefore overruled.

[5, 6] The seventh assignment complains that the verdict of the jury is signed alone by the foreman. This suit was instituted and prosecuted in the county court. After six jurors were impaneled, one of the jurors was excused by the court by the consent and under an agreement of the parties to the case, leaving only five. All the jurors did not sign the verdict. We do not understand that article 1977, Revised Civil Statutes, applies to jury trials in the county court. This has been expressly so held. Banana Company v. Wollfe, 22 S. W. 269. The court qualifies the bill of exception by stating there was no exception made to the verdict of the jury until after the jury was discharged. It has been held that the provision of the statute requiring the verdict to be signed by the foreman is directory, and that an objection that a verdict is not so signed comes too late after the verdict has been received and the jury discharged. Dunlap v. Raymond Rice Canal & Milling Co., 43 Tex. Civ. App. 269, 95 S. W. 44. If the statute requiring all the jurors to sign the verdict applied to county courts, we see no reason why the same rule should not be applied to the requirement for all jurors to sign.

[7] The eighth and ninth assignments will be considered together. These assignments are based on the refusal of the court to instruct a verdict for the appellant as to the penalty claimed. The proposition is that where the petition seeks a recovery for violation of the rules and regulations of the Railroad Commission in refusing to deliver less than car load lots of freight, and the rule and regulation introduced in evidence is one with regard to the transportation of car load shipments, the court should peremptorily charge the jury to find for the defendant as to the penalty. The petition in this case does not seek a recovery above upon the rules and regulations of the Commission, but seeks a recovery for the violation of the statutes. The regulation introduced in evidence gives a rule or regulation for the interchange of shipments in car load lots; but, as we understand the statutes, the penalty attaches by virtue of the law when a carrier refuses to deliver tonnage to the connecting carrier. The Supreme Court has said:

"The purpose of enacting articles 4574 and 4575 (6670 and 6671, R. S.) was to enforce the right of the shipper to route his shipment according to his own wishes. To do this the law provides that in case the Railroad Company should refuse to 'receive,' 'to transport,' or 'to deliver' the property so shipped to a connecting carrier, to be by it transported over its line to its destination, such carrier, so refusing, should be held guilty of discrimination, and, being guilty of discrimination, would be liable to the penalty prescribed in article 4575 (6671, R. C. S.)." Thompson v. Railway Co., 103 Tex. 372, 126 S. W. 257, 128 S. W. 109.

While on the Court of Civil Appeals, Judge Williams, in discussing the above statute, said:

"The contentions of appellee are: (1) That defendant was not bound to receive the cotton, and hence could have incurred no penalty; (2) that the penalty is prescribed only for a refusal in violation of regulations to be prescribed by the Commission, and that, as no such regulations had been prescribed, the statute could not operate. We have already disposed of the first contention. In answer to the second, it may be said that the statute does not provide that the refusal must be made in violation of regulations of the Commission, but that every railroad which shall, 'under such regulations as may be prescribed by the Commission, refuse,' etc. It seems that the intention was not to prescribe the penalty for the refusal, but to make the operation of the law subject to regulations which the Commission might adopt. The word 'under' may mean simply 'subject to,' and the language was probably intended to make the rule opera-

tive without regulations, but to subject its operation to such regulations when made. Under this view, if no regulations were ever adopted, the penalty could accrue for a refusal wherever the law required an acceptance; but, if there were such regulations, the question as to whether or not there was such a refusal as to incur the penalty would be determined from a consideration of them, as well as of the statute. We are inclined to think that this is the proper view to take of the provision." Inman v. Railway Co., 14 Tex. Civ. App. 39, 37 S. W. 37.

The following cases in some measure bear upon the question: Railway Co. v. Sabine Tram Co. (Civ. App.) 121 S. W. 256; Railway Co. v. Hannay, etc., 104 Tex. 603, 142 S. W. 1163, and authorities heretofore cited.

We think the facts in this case show that appellant refused to deliver the goods to its connecting carrier, and under the facts of this case there was no justification in it doing so. It could have collected its freight before accepting the goods and executing its bill of lading for transportation over the entire route. The fact that the other road was indebted to it upon settlement did not justify appellant in holding the goods and harassing appellee by demanding payment of the freight while the goods were in transit.

The ninth assignment is overruled. We do not think appellant's exception to the court's charge well taken. The charge is substantially correct. What has been heretofore said will dispose of the remaining propositions under this and the preceding assignments.

The tenth assignment will be overruled, for the reasons heretofore given.

[8] The eleventh assignment asserts that there was no evidence that authorized a recovery of special damages, for the reason that there was no notice given thereof at the time the contract was made. The damage claimed was to lumber upon which two or three rains fell between the time the roofing was shipped and its delivery to the Motley County Railway Company. It is alleged that the agent of the appellant was notified that the roofing was desired to cover lumber sheds at Matador, and, further, that appellant's sheds were then uncovered and exposed to the elements, and to any bad weather and rain, and that he could not obtain material for the covering, such as was shipped. There was no such notice given at the time the appellant accepted the shipment at Paducah, Tex., the 13th of August, 1914; but after it arrived at Roaring Springs the manager of appellee testified that he notified the agent of appellant on the 14th or 15th of August, 1914, of the condition of his lumber and the necessity for the shipment. The jury found such notice was given on the 15th, and between that date and the delivery to the Motley County Railway Company it rained and damaged the lumber.

The general rule is as contended for by appellant, but there are well-recognized exceptions. The damages in this case could have

been avoided by appellant by delivering the goods to the connecting carrier after it received notice of the use to which the roofing was to be placed and the probable consequences of such failure. "The plaintiff's loss did not arise from delay in transportation, nor from any cause for the prevention of which notice at the time of the contract was important, but from the failure to perform the simple duty to deliver the property, due to the faithlessness of defendant's agent, at a time when the consequences thereof were fully disclosed." Bourland v. Choctaw, etc., 99 Tex. 407, 90 S. W. 483, 3 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 647. We believe that that cause announced the rule which should govern this case. The Court of Civil Appeals at Austin announces substantially the same rule in the case of Wells Fargo v. Battle, 5 Tex. Civ. App. 532, 24 S. W. 353:

"If it be true, as contended by appellee, that appellant received the order book and transported it with the other freight to Ballinger, the point of destination, and thereafter received notice of the relation the book bore to the other freight, and the necessity for its prompt delivery to appellee, and then negligently failed to make such delivery, we see no reason why it should not be held liable for special damages, although it may have had no notice of the importance of the book and necessity for its early delivery before it reached its destination."

On the authority of the two cases cited, we overrule the eleventh assignment of error.

We find no reversible error, and the judgment of the trial court will be affirmed.