### JAMES A. THOMPSON V. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS.

No. 2027.   Decided March 23, May 18, 1910.

**1.—Penal Statute—Construction.**

Penal provisions, like all others, are to be fairly construed ·according to the legislative intent expressed in the enactment.   Courts will not, by any mere verbal nicety, forced construction, or equitable interpretation, exonerate parties plainly within their scope.   (P. 378).

**2.—Carriers—Delivery to Connecting Line—Discrimination—Statute.**

The requirement that a railway "transport and deliver without delay or discrimination tonnage or cars, loaded or empty, destined to any point on or over the lines of any connecting line of railroad" (Revised Stats. art. 4574) is not met by the mere act of placing the cars physically in the possession of such connecting road, where the delivering road retains control over the subsequent transportation by requiring the receiving one, as a condition of such delivery, to disregard the routing of such cars given by the shipper and forward them to their destination by another route.   (Pp. 379, 380).

**3.—Same—Case Stated.**

Plaintiff, a dealer at Taylor on I. & G. N. Railroad, purchased lumber from mills at Willard, on a line of defendant's road running from Trinity to Colmesneil.   The sellers, at his demand, shipped it with written directions to deliver at Trinity to the I. & G. N. road for transportation over its lines therefrom to Palestine and thence to Taylor.   Besides this route, two others were available, each giving the defendant road a larger proportion of the haul and division of the rate, which was the same for each of the three routes, than did the one selected by the shipper.   These were, by the defendant's line to Trinity, thence by the I. & G. N. to Houston and by defendant's line from there to Taylor; or by defendant's road to Corrigan, thence by the H. E. & W. T. Ry. to Houston, and from there by defendant to Taylor.   By agreement between defendant and the I. & G. N. the latter road disregarded the shipper's routing by Palestine, and following the directions of defendant's way billing, carried all such shipments to Houston and delivered them there to defendant to complete the transportation.   It was compelled or induced to do so by defendant's threat to divert the shipments to Houston by way of the H. E. & W. T. if it refused.   Held, that such refusal of defendant to deliver the cars to the I. & G. N. for transportation by it in accordance with the routing given by the shipper was a violation of the statute prohibiting unjust discrimination (Rev. Stats. art. 4574)· and rendered defendant liable for the penalties prescribed for such violation ΄(Rev. Stats., art. 4575).   (Pp. 375–382).

**4.—Cases Discussed.**

Schloss v. Atchinson, T. & S. F. Ry. Co., 85 Texas, 601, distinguished.   San Antonio & A. P. Ry. Co. v. Stribling, 99 Texas, 319, explained and followed.   (Pp. 380, 381).

**5.—Carriers—Routing by Shipper—Bill of Lading—Waiver.**

At a station where no agent was maintained, shippers of lumber, by direction of the consignee, its purchaser, made out written receipts for the loaded cars to be signed by the conductor taking them ,out and specifying the routing ·of the shipment over connecting lines to the destination, also directing the conductor not to take and haul the cars unless such routing was to be followed.   By direction of the railway, the conductors in all cases erased these directions and substituted a different routing, and the company issued its bill of lading and

made way bills to its connections with such altered routing, and required connecting lines to transport in accordance therewith and not with the shipper's directions, this course of proceeding being observed through a series of shipments. Held, that the consignee did not, by acceptance of the bill of lading with such changed routing and receipt of the goods thereon at destination, waive his right to have the cars transported in accordance with the routing he had designated. Evidence considered and held to support a finding that the receipt of the cars by the company with such changed designation was not assented to by the shipper. (P. 381).

ON MOTION FOR REHEARING.

**6.—Constitutional Law—Connecting Lines—Exchange of Cars—Compensation.**

Subdivision 2 of article 4574, Revised Statutes, relates to the duty of railroads to receive and transport the cars of other roads, not its own, and is not unconstitutional as requiring them to deliver their own loaded cars to another road for transportation without provision for compensation for their use. Gulf, C. & S. F. Ry. Co. v. State, 120 S. W., 128.  (Pp. 381, 382).

Error from the Court of Civil Appeals for the Sixth District, in an appeal from Travis County.

Thompson sued the railway company and had judgment. Defendant appealed and the judgment was reversed and rendered in its favor. Missouri, K. & T. Ry. Co. of Texas v. Thompson, 55 Texas Civ. App., 12. Appellee then obtained writ of error.

*Cochran & Penn,* for plaintiff in error.—The petition showed as to each shipment an unjust discrimination against plaintiff within the provisions of subdivision 2, article 4574, Revised Statutes of Texas, and the action of the trial court in overruling said exceptions presented by appellant to the petition was correct. Rev. Stats., art. 4574, sec. 2, 4575; Inman v. St. Louis & S. W. Ry. Co., 14 Texas Civ. App., 39; S. A. & A. P. Ry. Co. v. Stribling, 99 Texas, 319; s. c., (Civ. App.), 86 S. W., 374.

The Railroad Commission of Texas has no authority under the law, either by an order made by it or by acquiescing in any agreement between two or more railroad companies, to deny a shipper the right which he has under the law to select the route over which his shipments shall be carried. Rev. Stats., art. 4562; Inman & Co. v. St. Louis & S. W. Ry. Co., supra.

The acceptance by appellee of the receipts for his shipment with the words directing that the same should be carried by way of Palestine erased did not amount to a waiver by him of or a change in the routing instructions given by him. Same authorities.

*Coke, Miller & Coke, A. H. McKnight,* and *Fiset & McClendon,* for defendant in error.—The petition showing upon its face that plaintiff tendered bills of lading or receipts with each of said shipments, routing the shipments via Palestine; that defendant refused the shipments as routed, but took the bills of lading, erased the routing and returned the bills of lading to plaintiff with such routing erased, and thereupon accepted and transported the shipments via Houston, no cause of action for discrimination as to such shipments was alleged, because, under such circumstances, no routing via Palestine was shown

to exist. Rev. Stats., art. 4574, subdivision 2; San Antonio & A. P. Ry. Co. v. Stribling, 99 Texas, 319.

When plaintiff delivered his property to defendant and accepted the bills of lading with the Palestine routing erased, other rights than those for a failure to accept as tendered arose; and these do not include the right to recover a penalty given only for another character of wrong, namely, a failure to ship as destined. Same authorities.

Whatever instructions to route via Palestine may have been given were waived or abrogated by the subsequent acceptance of the written bills of lading, covering each shipment, in each of which the routing via Palestine was erased. The trial court therefore erred in said second conclusion of law to the effect that said shipments were destined to a point on and over the line of the connecting carrier, the International & Great Northern Railway, via Palestine to Taylor. Rev. Stats., art. 4574, subdivision 2; San Antonio & A. P. Ry. Co. v. Stribling, above.

The writ of mandamus will not issue to protect an anticipated omission of duty, but it must appear that there has been actual default of a clear legal duty then due at the hands of the party against whom the relief is sought. Northwestern Warehouse Co. v. Oregon Railway, 32 Wash., 218; High on Extraordinary Legal Remedies (3d ed.), art. 12.

A mandamus will not be awarded to control the future acts of a party or his agents where the conditions surrounding the parties may or may not change and the injuries sought to be averted may or may not exist, and especially where such party or his agent may be called upon to pass upon difficult and uncertain questions of law in determining whether the doing or failure to do particular acts would constitute a violation of the mandamus. Atlanta & West P. Railway v. Speer, 79 Am. Dec., 305.

Plaintiff's suit was under a penal statute, giving heavy penalties to the injured party. Such statutes will be strictly construed, and where the penalty is expressly provided in such statute such penalty is the sole and exclusive redress and punishment which can be inflicted under the statute. The court therefore committed error in awarding the mandamus in addition to the penalties. Rev. Stats., art. 4574; Gulf, C. & S. F. Ry. v. Moore, 98 Texas, 302; Givens v. Delprat, 28 Texas Civ. App., 363; Duck v. Peeler, 74 Texas, 268; Moreland v. Wynne, 63 S. W., 1092; United States v. New Bedford Bridge, 1 Wood & Minot, 401; In re International P. & P. Co., L. R., 6 Ch. Div., 556; Sutherland "Statutory Construction," 350; 22 Cyc., 774, 768, 784.

A writ of mandamus is a harsh and extraordinary remedy which will be afforded only in the absence of other adequate legal remedy. Arberry v. Beavers, 6 Texas, 457; Ewing v. Cohen, 63 Texas, 482; Screwman's Association v. Benson, 76 Texas, 552; Aycock v. Clarke, 94 Texas, 375; State v. Mobile & M. Railway, 59 Alabama, 321; Legg v. City of Annapolis, 42 Md., 203; Merrill on Mandamus, secs. 10, 11, 12, 51, 163.

*Baker, Botts, Parker & Garwood, Spoonts, Thompson & Barwise,*
and *N. A. Stedman,* attorneys for G., H. & S. A. Ry. Co., H. &

T. C. R. R. Co., Ft. W. & D. C. Ry. Co., not parties, but having an interest in the questions involved, as friends of the court, filed argument in support of the motion for rehearing.

MR. JUSTICE BROWN delivered the opinion of the court.

We copy from the opinion of the Honorable Court of Civil Appeals the following statement and findings of fact:

"This suit was instituted · by the appellee to recover penalties for unjust discrimination provided for in Art. 4574 of the Revised Civil Statutes.

"*Findings of Fact.*—At the time of filing this suit, and for some years prior thereto the appellee was engaged in the business of retailing lumber at Taylor, in Williamson County, Texas. . He purchased a large amount of his lumber from the Thompson-Tucker Lumber Company at its mills at Willard, a small station situated on the line of the appellant railway company running from Trinity in Trinity County, through Corrigan in Polk County, to Colmesneil in Tyler County. On different dates between April 1, 1906, and September 5, 1907, the appellee purchased of the aforesaid lumber company fifty-seven carloads of lumber delivered f. o. b. the cars at Willard, for the purpose of having the same shipped to him at Taylor, and which was thereafter so shipped and delivered on different dates during that period of time. There were three routes 'by which such shipments could be made from Willard to Taylor; one over the appellant's T. & S. line to Trinity, thence over the I. & G. N. Railway to Houston, and from there over another line of the appellant's to Taylor; another from Trinity over the I. & G. N. Railway to Palestine, and thence over · the same company's line to Taylor; still another from Willard to Corrigan, thence over the Houston, East & West Railway to Houston, and from there over the appellant's line to Taylor. The distances from Willard to Taylor over these respective routes were as follows: over the first mentioned 278. miles; the second, 236 miles; and the third, 272 miles. Over each route the Railroad Commissioner had established a rate, which was the same for all. The appellee had for some time previous to the first mentioned date, and during all of the time the shipments were made, desired that his lumber should be carried over the appellant's line to Trinity, thence over the I. & G. N. Railway via Palestine to Taylor, claiming that it reached its destination by that route in a shorter time, and for other personal reasons. Acting for him in the method of routing the shipments, the agents of the Thompson-Tucker Lumber Company, on the several occasions when each of the fifty-seven cars of lumber were to be delivered to the appellant for shipment, and before they were received by the appellant at Willard, tendered to the appellant's agents in charge of the trains upon which the cars were to be shipped, duplicate receipts upon the following blank form:

" 'Willard, Texas, ........190..

Delivered by

### THOMPSON & TUCKER LUMBER COMPANY
·to M., K. & T. R. R. Co.

In apparent good order, the articles named below, to be delivered in like good order, without unnecessary delay.

To . . ...............................................................
At . . ...............................................................
Via . . ............:..................................................
Marks . . ............................................................
As per conditions of Company's Bill of Lading.
...............................Lumber.

| Initial | Car No. |
|---|---|
| ...................... | .................... |

........................Conductor.

Train No. ...................    ........................190..'

"The blanks 'To,' 'At' 'Via' in each of the fifty-seven receipts were filled in in pencil so as to read 'To *order J. A. Thompson, Taylor, Tex., c/o I. & G. N. Ry. Co.* At *Trinity, Texas, for continuous transportation by I. & G. N.* Via *Trinity, Palestine and I. & G. N. Ry.*' In the shipment of· January 10, 1907, all the words in pencil (italics above) were erased; in twenty-four of the shipments the words 'for continuous transportation by I. & G. N. (via) Trinity, Palestine and I. & G. N. Ry.' were erased; and in the balance the words 'Trinity, Tex., for continuous transportation by I. & G. N.' (via) 'Trinity, Palestine and I. & G. N. Ry.' were erased.

"The bill of lading referred to in the above mentioned receipt was that found on one of the blank forms in general use by the appellant railway company. Among other provisions, that form contains an undertaking on the part of the appellant to deliver the freight at the point of destination if that point is on its line; if not, then to deliver to its next connecting carrier; and also a provision limiting its liability for damages to that which occurs upon its own line.

"There was no local agent at Willard, and the bills of lading, or receipts as they are called, were signed by the conductors in charge of the trains. The receipts were usually tendered by an agent of the lumber ·company called the 'shipping clerk.' This clerk was not present upon all of the occasions when the cars and receipts were tendered to the appellant for transportation. In most of the instances, whether present or not, a note was attached to the duplicate receipts left for the conductor to sign, in which he was requested that unless he would handle the cars according to the routing instructions given in the receipts not to undertake. to handle them at all. The officials in charge of the management and control of the appellant's line were well aware of the desire of the appellee that the cars containing his

lumber should be routed by way of Trinity and Palestine over the I. & G. N. Railway to Taylor; and the agents of the lumber company, at the time they tendered the duplicate receipts above referred to, in addition to the note attached, verbally requested that those wishes be carried out. The conductors, however, acting under orders from their superiors, disregarded those instructions, made the erasures before mentioned, and after doing so signed the receipts and delivered them to the shipping clerk of the lumber company if he was present, and if not, left them where they could be obtained by him upon his return, and then would take charge of the car, transport it to Trinity and there deliver it to the I. & G. N. Railway Company accompanied by a waybill providing for its carriage to Houston and there to be delivered again to the appellant for shipment to Taylor.

"The court found that appellee accepted those receipts as signed after the erasures showing the routing via Palestine had been made, and allowed the appellant to take charge of the cars of lumber with no routings except those remaining upon the receipts as shown. The testimony is sufficient to show that the desire of the appellee to have his cars containing the lumber shipped from Willard to Taylor routed by way of Palestine over the I. & G. N. Railway, while well known to the appellant and the officials in charge of that department of its business, had been uniformly disregarded, and all of the fifty-seven cars were routed by way of Trinity and Houston and thence over the appellant's main line to Taylor. The reason given by the appellant's general freight agent was that he desired his company to get the benefit of the long haul from Houston to Taylor, which it would not do if the routing was by way of Palestine over the I. & G. N. Railway. At the time these shipments were made there was in effect between the appellant and the I. & G. N. Railway Company a traffic agreement by which it was understood between the two companies that all freight originating on the appellant's T. & S. branch and destined to points on or over appellant's line south of Waco should be carried by way of Houston. This traffic agreement was then on file with the Railroad Commission, but there was no other evidence of whether or not it had been approved by the Commission.

"Some time previous to the date of any of the shipments here under consideration, there had arisen between the appellant and the appellee a similar controversy concerning the routing of his lumber from Willard to Taylor. This controversy ultimately resulted in a suit by appellee for the statutory penalties, but the litigation was settled by compromise. During the time of that controversy the general freight agent of the appellant had informed the freight agent of the I. & G. N. Railway Company that if the latter company did not respect appellant's routing of shipments originating at Willard destined to Taylor by way of Houston, all of the freight originating at Willard would be carried by way of Corrigan over the H., E. & W. T. Railway to Houston, thus diverting that traffic from the I. & G. N. Railway Company. By reason of this threatened diversion of the traffic the I. & G. N. Railway Company thereafter followed the routing indicated in the waybills delivered to it by the appellant company. The refusal of the appellant to deliver the fifty-seven cars

of lumber to the I. & G. N. Railway Company with appellee's routing instructions contained in the receipts made out at Willard is the basis of this suit."

Article 4574, Revised Statutes, subdivision 2, contains this language: "Every railroad which shall, under such regulations as may be prescribed by the Commission, fail or refuse to transport and deliver without delay or discrimination any passengers, tonnage or cars, loaded or empty, destined to any point on or over the lines of any connecting line of railroad, shall be deemed guilty of unjust discrimination."

Article 4575, Revised Statutes, reads as follows: "In case any railroad subject to this chapter shall do, cause to be done, or permit to be done any matter, act or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter or thing herein required to be done by it, such railroad shall be liable to the person or persons, firm or corporation injured thereby for the damages sustained in consequence of such violation; and in case said railroad company shall be guilty of extortion or discrimination as by this chapter defined, then, in addition to such damages, such railroad shall pay to the person, firm or corporation injured thereby a penalty of not less than one hundred and twenty-five dollars nor more than five hundred dollars, to be recovered in any court of competent jurisdiction in any county into or through which such railroad may run."

The defendant in error invokes the rule that penal statutes must be strictly construed and the Honorable Court of Civil Appeals adopted the suggestion, applying the rule in its extreme rigor to the facts of this case. The rule upon this subject which now prevails, being sustained by the best authority, is forcibly expressed by Chief Justice Fuller of the United States Supreme Court in the case of United States against Lacher, 134 U. S., on page 629, by the following quotation from Mr. Sedgwick on Statutory and Constitutional Law: " 'The rule that statutes of this class are to be construed strictly, is far from being a rigid or unbending one; or rather, it has in modern times been so modified and explained away as to mean little more than that penal provisions, like all others, are to be fairly construed according to the legislative intent as expressed in the enactment; the courts refusing, on the one hand, to extend the punishment to cases which are not clearly embraced in them, and, on the other, equally refusing by any mere verbal nicety, forced construction or equitable interpretation, to exonerate parties plainly within their scope.'

"This passage is quoted by Baron Bramwell in Attorney General v. Sillem, 2 H. & C., 532, as one 'in which good sense, force and propriety of language are equally conspicuous; and which is amply borne out by the authorities, English and American, which he cites.' "

That quotation expresses the rule of construction that is applicable to the facts of the case now before us. State v. Kansas City, Ft. S. & G. R. R., 32 Fed. R., 726; Pike v. Jenkins, 12 N. H., 261. In the case last cited the court said: "In construing penal statutes the proper course is to search out and to follow the true intent of the Legislature, and to adopt that sense which harmonizes best with

the context, and promotes, in the fullest manner, the apparent policy and objects of the Legislature."

In order to determine the proper construction of the language of the articles above quoted from the Revised Statutes, it is necessary that we should ascertain the purpose and intent of the Legislature in enacting them. Thompson had the undoubted right in shipping his cars of lumber to designate the route by which they should be carried by the different railroads over which they were destined to pass. Inman & Co. v. St. Louis & S. W. Ry. Co., 14 Texas Civ. App., 39, 37 S. W., 37. This right is not controverted by the defendant. That undoubted right would be of little avail to shippers over railroads in this state if there were not some provision for enforcing its observance. We must look to the language, the subject of legislation, the right to be secured and the evil to be remedied to determine the purpose and intent of the Legislature as embodied in Article 4574, and, judging from the facts of this case, the remedy is not more than adequate. If a fair construction of the language used in the law, in view of the purpose of its enactment, will embrace the acts of the defendant shown by the evidence, then the evidence establishes a cause of action against the defendant. If, however, the acts, which are claimed to be a violation of the statute, do not come within the terms of the statute when construed as we have stated, then the court can not inflict the penalty no matter how unjustly the railroad has treated Thompson. The paramount rule for construing statutes of any class is to ascertain what the Legislature intended to prescribe by the language used, "all others are helps," to the accomplishment of that purpose.

The crucial point in this case is to determine the meaning of the word, "deliver," as used in Article 4574. The Honorable Court of Civil Appeals held that "a physical delivery" is all that our statute requires, that is, delivery without the right of control, satisfies the law. The purpose of enacting Articles 4574 and 4575 was to enforce the right of the shipper to route his shipment according to his own wishes. To do this the law provides that in case the railroad company should refuse to "receive," "to transport," or "to deliver" the property so shipped to a connecting carrier to be by it transported over its line to its destination, such carrier, so refusing, should be held to be guilty of discrimination, and being guilty of discrimination would be liable to the penalty prescribed in Article 4575. Now let us test the meaning placed upon this language by the defendant and by the Honorable Court of Civil Appeals in the construction of the word, "deliver." There is no question made as to the fact of the cars having been hauled to the point of connection with the connecting carrier, but the whole case depends upon whether or not the defendant in error, within the meaning of the law, delivered the cars to the International & Great Northern Railroad Company. The object of the shipper in directing the delivery of the cars to the International & Great North Railroad Company was to have that railroad transport them to the place of destination on that road, that is, Taylor. Obedience to the law required that the delivery should be such as would secure to Thompson that right. The defendant in

error placed the cars upon the tracks of the International & Great Northern Railroad; that is, it placed them in its possession in the sense of a "physical possession," but in doing so it imposed conditions which defeated the accomplishment of the purpose to have the connecting line transport the goods to Taylor. By its course of dealing defendant in error held the control and legal possession of the cars. In no sense consistent with the purpose of the Legislature or with the rights of the shipper can such "physical possession" be called a lawful delivery.

We are of opinion that the defendant in error was guilty of arbitrarily disregarding the rights of Thompson to designate the line of railroad upon which his cars should be carried to their destination, and, by refusing to accord to him that right, acted wilfully in defiance of the law of the State, forcing the cars against the will of the owner to be carried over a different route than that which had been designated for their transportation.

Schloss v. Atchison, Topeka & Santa Fe Railway Company, 85 Texas, 601, was to recover a penalty given by law for failure to deliver goods which had been transported to their destination where the charges shown in the bill of lading were paid. The charges for the transportation of the goods in that case did not appear in the bill of lading as the statute specified and this court held that the failure to deliver the goods under such circumstances did not come within the terms of the law which denounced the penalty. The distinction between that case and this is that the "expense account" could not by the most liberal construction be made to embrace a bill of lading and as the statute imposed a penalty for the failure to deliver when the expenses were shown in the "bill of lading" to have been paid, there could be no recovery; while in this case the penalty is inflicted for the failure to deliver to the connecting carrier, a definite act prescribed by law. The act which is claimed to be a violation of a penal law must be fairly within its terms to sustain an action for the penalty.

In San Antonio & Aransas Pass Railway Co. v. Stribling, 99 Texas, 319, three cars were included in a bill of lading which specified that they should be carried to Giddings and there delivered to the Houston & Texas Central Railway Company to be transported to Graphite on the Houston & Texas Central Railroad. The shipper instructed verbally that the cars should be delivered at San Antonio to the International & Great Northern Railroad Company and then carried to Austin and there delivered to the Austin & Northern Railroad Company. With reference to the three cars this court held that the contract itself specified the route and destination and, therefore, it must prevail over the parol instruction given by the shipper. In the same case was embraced a claim for damages for another car shipped from the same point by the same party and over the same railroad in which the bill of lading expressed the destination as Graphite. The shipper gave instructions that the cars should be delivered at San Antonio to the International & Great Northern Railroad Company to be carried to Austin and thence by the Houston & Texas Central Railroad to Graphite, but the carrier disregarded

these instructions as to routing the car and carried it as it did the other three to Giddings and then to its final destination. This court held that the shipper had the right to specify the routing of his car and that the refusal to obey the instruction made the railroad company liable for the penalty specified in Article 4575. There is practically no difference between the decision as to the one car embraced in the case just referred to and this, the principles which govern the two cases being the same. The shipper's right to route the car and the duty to deliver to the connecting carrier were involved in that case as in this.

It is insisted on part of the defendant in error that Thompson, by receiving the bill of lading which specified the route by which the defendant company forced the International & Great Northern Railroad Company to haul the cars, waived his right to route the freight. But there was no consent on the part of Thompson by acceptance of the bill of lading or by signing any contract in connection with it, as in the Stribling case. The Missouri, Kansas & Texas Railroad Company, by its agent, erased the instructions given in the form of the receipt provided for it to sign and inserted its own terms. It disregarded the instructions of Thompson's agent, that it should not take the cars except upon the direction to carry according to his routing, and left for him bills of lading or receipts which expressed its own mind but not that of the shipper. One mind can not make a contract. This was no contract between Thompson and the railroad company, but was a highhanded disregard of Thompson's legal rights and a forcible taking and carrying of his property according to its own wishes without consent on his part but to serve its unlawful purpose. He had no choice when the cars reached Taylor but to recive them and by so doing he did not in any way ratify the unlawful acts of the defendant.

The defendant in error insists that there was no evidence to justify the court in finding that it had taken the possession of the cars of the shipper without his consent, but we are of opinion that the testimony was amply sufficient to justify the conclusion of the trial court on this point. We conclude that the Honorable Court of Civil Appeals erred in reversing the judgment of the District Court and in rendering judgment in favor of the railroad company; it is therefore ordered that the judgment of the Court of Civil Appeals be reversed and that the judgment of the District Court be affirmed.

### ON MOTION FOR REHEARING.

All of the questions embraced in this motion for rehearing, as presented to us, were carefully examined on consideration of the case, and have been reviewed. We see no cause to change our conclusions as expressed in the original opinion.

Eminent attorneys of this court, acting as friends of the court, submit for our consideration that subdivision 2 of Article 4574, as construed by this court, is in conflict with the constitution of the United States, because it requires railroad companies to deliver their cars to connecting lines to be carried over such connecting lines

without providing for adequate compensation for the use of the cars, or providing for their safe return to the owner. No such question was made in the case, as presented to the court, neither is there evidence upon which the question would properly arise. No demand was made by Thompson on the railroad company to deliver its cars to the International & Great Northern Railroad Company. The demand was it should deliver the lumber at Trinity to the I. & G. N. R. R. Co., to be by it transported to Taylor by way of Palestine. The M., K. & T. Ry. Co. of Texas voluntarily delivered its cars to the I. & G. N. R. R. Co. at Trinity, loaded with Thompson's lumber, but under such instructions as denied to Thompson the right to route his freight, and it was upon this state of facts that the court held the railroad company to be liable for penalties prescribed by the statute.

The second subdivision of Article 4574, as applicable to the facts of this case, reads thus: "Every railroad company which shall fail or refuse, under such regulations as may be prescribed by the Railroad Commission, to receive and transport without delay or discrimination, . . . the cars, loaded or empty, of any connecting line of railroad; and every railroad which shall, under such regulations as may be prescribed by the Commission, fail or refuse to transport and deliver without delay or discrimination any . . . cars, loaded or empty, destined to any point on or over the line of any connecting line of railroad, shall be deemed guilty of unjust discrimination." The language of the statute distinctly and unequivocally refers to cars belonging to other railroads which are to be received, transported and delivered to another connecting line of railroad. Of course, it could not mean that it was to receive its own cars and transport and deliver them, and there is not in the act any expression by which it could be construed to mean that the cars mentioned therein were the cars belonging to the railroad company charged with the duty of receiving, transporting and delivering.

In Gulf, C. & S. F. R. R. Co. v. The State, 120 S. W., 1028, the Court of Civil Appeals held that a railroad company could not be required, under the clause of the statute in question, to deliver its own cars to a connecting line, unless provision should be made for compensation for the use of the cars and provisions for their safe return to the owner. A writ of error was refused by this court in that case.

The motion for rehearing is overruled.

*Reversed and judgment of District Court affirmed.*