**QUANAH, A. & P. RY. CO. v. MOORE.**
(No. 1049.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 25, 1916. Rehearing Denied Nov. 15, 1916.)

1. CARRIERS ⊚═20(6) — NONDELIVERY OF FREIGHT—ACTION FOR PENALTY—DEFENSES.
   In a suit for damages and to recover a penalty for the violation of Rev. St. 1911, arts. 6670, 6671, for willfully and wrongfully refusing to deliver goods consigned to the plaintiff, on which freight had been prepaid, to a connecting carrier at the junction for carriage to plaintiff's place of residence, and for violation of the Railroad Commission's rule, requiring a railroad to receive and transport goods legally tendered subject to a penalty for delay, and allowing 48 hours additional at junctions where it is necessary to rehandle goods, where it appeared that the defendants and the connecting carrier had violated articles 6589, 6608, in failing to maintain a depot at the junction for keeping goods, it was no defense that they were carried beyond to a point on defendant's railroad and there retained for failure of the connecting carrier to settle advance charges on the goods previously delivered to it, and for delivery only on payment of the freight to the junction point.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 41; Dec. Dig. ⊚═20(6).]

2. CARRIERS ⊚═20(6)—CARRIAGE OF GOODS—NONDELIVERY — DEFENSES — SEPARATION OF GOODS.
   Even if the conditions were such that the defendant could not deliver the goods without taking them to a point on its line beyond the junction for separation from other goods, it would not be relieved from liability, unless such conditions were made known to the shipper before the goods were delivered to it for transportation.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 41; Dec. Dig. ⊚═20(6).]

3. CARRIERS ⊚═13(1)—CARRIAGE OF GOODS—DISCRIMINATION.
   The idea prominent in legislation as to receiving and transporting freight is equality, and carriers are not permitted to exercise their charter rights so as to benefit one individual or community, to the detriment of another.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 21–24; Dec. Dig. ⊚═13(1).]

4. CARRIERS ⊚═2 — DELAY IN DELIVERY — RULES OF RAILROAD COMMISSION—EFFECT ON STATUTE.
   The rule of the Railroad Commission, requiring goods legally tendered to a carrier to

be received and transported subject to a certain penalty for delay in delivery, enacted under article 6687, authorizing the Commission to make all needful regulations for unloading cars at junction points, did not repeal or supersede article 6670, subd. 2, providing that if a carrier fails or refuses, under regulations made by the Commission, to transport and deliver without delay, it shall be guilty of discrimination, since the right to regulate does not give the right to substitute a different penalty from that prescribed by the statute.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 4, 5; Dec. Dig. ⊚═2.]

5. CARRIERS ⊚═19 — DELAY IN DELIVERY — DAMAGES OR PENALTY—MEASURE.
   In a suit for damages and to recover a penalty for the violation of Rev. St. 1911, arts. 6670, 6671, for willfully and wrongfully refusing to deliver goods consigned to plaintiff to a connecting carrier, and for carrying them beyond the connecting point, plaintiff's profits on the amount of goods sold were not a proper measure of damages, where it did not appear that such profits were lost by a refusal to deliver them within the statutory time.
   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 33–49; Dec. Dig. ⊚═19.]

6. APPEAL AND ERROR ⊚═932(1)—PRESUMPTION—DAMAGES.
   In a case, tried by the court, it will not be presumed that the court improperly allowed plaintiff's profits as damages, where there was no evidence to show that such profits were in fact lost to plaintiff.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3782; Dec. Dig. ⊚═932(1).]

Appeal from Motley County Court; C. B. Whitten, Judge.

Action by R. P. Moore against the Quanah, Acme & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

D. E. Decker and J. A. Clarke, both of Quanah, and G. E. Hamilton, of Matador, for appellant. T. T. Bouldin, of Matador, for appellee.

HUFF, C. J. This suit was instituted by appellee for damages and to recover a penalty for the violation of articles 6670 and 6671 of the Revised Civil Statutes of 1911, in that appellant willfully, wrongfully, and maliciously refused to deliver the goods consigned to him at Matador, to the Motley County Railway Company, the connecting carrier at Matador Junction, but carried the same beyond that point to Roaring Springs, on appellant's line of road. The facts in this case sufficiently show that the shipment of goods was received by the appellant on its line of road at Quanah, Tex., to be transported over its line of road, to the Matador Junction, and thence to Matador over the Motley County Railway Company's road to Matador, appellee's residence and place of business, to whom the consignment was made. The agent of appellant wrote to appellee at Matador with reference to the shipment:

"Owing to the failure of the Motley County Railway Company to make satisfactory settlement for the advance charges on freight there-

tofore delivered that line, this company will only deliver this freight to the connection, when the freight to Matador Junction has been paid to us. We will deliver this freight to you at this office (Roaring Springs) on payment of freight charges or will deliver to the Motley County Railway Company at the junction on payment of freight to that point. Please advise what disposition you desire made of the freight."

Upon receipt of the above letter the appellee called up the agent, and requested him to send the goods to him at Matador. The agent replied that he had instructions from his company to hold the freight until the freight charges were paid at Roaring Springs. The agent testified that he did not send out the usual card of notice, but instead thereof sent out the letter or the above notice, by direction of the officials of appellant road. This was done in an effort to have freight charges theretofore advanced and paid by appellant repaid by the Motley County Road. He, however, testified that the freight on this particular shipment was prepaid, and that he delivered it to the other road as soon as he could separate it from other shipments made to Afton. The evidence shows the shipment was held from the 24th until the 27th of August, 1914. Mr. Gaines, the superintendent of the Motley County Railway testified that his road was able to and did handle all freight delivered it by appellant at the junction; that he called up the agent at Roaring Springs about the 23d to the 26th, and asked why the freight for Matador consignees was not delivered to the Motley County Railway Company. The agent told him he was instructed to hold the freight until settlement between the two roads in the freight controversy was had; that his road ran cars every day, except one or two, and met appellant's train at the junction; that there was no depot or agent at the junction maintained by either road, but that the freight was delivered to the Motley County Railway Company from car to car, except carload lots; that since the settlement of the freight controversy all carloads and less than carload lots consigned to Matador have been stopped at the junction and not sent to Roaring Springs. Circular 2703 was introduced in evidence as the Railroad Commission's rule, governing transportation of freight less than carload shipments. This provides for such shipments legally tendered to a railroad company at its customary place of receiving such shipments, stipulating that it shall promptly receive the same, and for failure to receive and transport such shipments the company at fault shall pay to the shipper the following amounts in cents per hundred pounds (setting out a scale according to days detained or delayed, the minimum charge for any one shipment, five cents): "Provided that forty-eight hours additional time shall be allowed at junction points or division terminals when it is necessary to rehandle the shipment."

[1-3] The first, second, third, and fourth assignments urge that the judgment of the court is not supported by the evidence. By propositions it is urged, where there is no depot or agent at the junction, that it is not a violation of article 6670 or of the rules of the Railroad Commission to carry property beyond the station; that it was not an offense to delay 72 hours when that was the earliest delivery possible under the conditions existing at the junction. In failing to establish and maintain a depot or place for keeping and caring for goods to be delivered and transported to the connecting lines the two roads in question violated the statutes. Articles 6589 and 6608. Their violation of these statutes will not relieve the one violating the article fixing a penalty for failure or refusal to deliver the goods to its connecting carrier. The facts show, and the court was justified in finding, that the goods were not in fact held for separation from other shipments to other points, but were held under instructions from the officials of appellant until a freight dispute could be adjusted between the two roads. This, clearly, did not excuse the failure or refusal for 72 hours, or for any time, to deliver the goods. It was no excuse for annoying the shipping public. To compel the shippers of Matador, on the Motley County Railway Company's road to go to Roaring Springs to pay the freight and get their goods would be intolerable. The letter of the agent in this case was evidently so worded as to impress the shipper such would be required of him. The idea prominent in our legislation upon receiving and transporting freight is equality. They are not permitted to exercise their charter rights in such manner as to benefit one individual, town or community, to the detriment of another. Railway Co. v. Smith, 63 Tex. 322. Even if the conditions were such that the appellant could not deliver the goods at the junction without taking them to Roaring Springs for separation, from other freight, this would not relieve it from liability to comply with the law unless such conditions were made known to the shipper before their delivery to it for transportation. Railway Co. v. Hannay, 104 Tex. 603, 142 S. W. 1163. This court has held the excuse given in this case will not relieve the road from liability under the statute. Railway Co. v. Jones, 178 S. W. 858; Railway Co. v. Warren, 184 S. W. 232. The Commission's rule required the delivery and receipt of this character of freight to be at the customary place. The evidence, without contradiction, both before and after the dispute, shows that the Motley County Railway Company's train met appellant's at the junction each day and received freight from it by delivering from one car to the other. This was the customary place and manner, but appellee, owing to the dispute, refused to deliver the freight as had been customary.

It is contended the rule gave appellant 48 hours. If this is true the freight was not delivered within that time under the undisputed facts in this case. Want of time for the delivery was not then urged by appellant, or that it would require the 48 hours allowed by the rule. At that time it gave no other reason than that of the dispute and unreasonably demanded that the freight must be paid and the goods received at Roaring Springs. It not only violated the statute, but the regulation of the Commission as well.

[4] It apparently is urged because the Commission fixed a different penalty to that of the statute that this necessarily repealed or superseded the statutory penalty. If these articles of the statute were not repealed by the Railroad Commission Act, by implication, then for a stronger reason a rule by the Commission will not repeal or supersede them. Railway Co. v. Hannay; Railway Co. v. Warren, supra. The Railroad Commission was granted no such power. Subdivision 2, art. 6670, provides if the carrier "shall fail or refuse, under such regulation as may be prescribed by the Commission," "to transport and deliver without delay," it will be guilty of discrimination. The right to regulate does not give the right to substitute a different penalty or substitute a rule for the statute. It may regulate the manner of doing the thing and the like, but cannot abrogate the statute. Article 6687 indicates what is meant by the term "under such regulation." "The Railroad Commission of Texas shall have the power, and authority is hereby vested in it, to make all needful rules and regulations for unloading cars at junction points," etc. Whenever a railroad fails or refuses to transport or deliver without delay such freight to the connecting carrier, it violates the statutes. If the road has complied with the regulations of the Commission, it may be excused perhaps. In this case, however, there was no pretense at the time of the refusal of conforming either to the mandates of the law or the rule; but the refusal was based on an unreasonable contention and demand by the railroad. These assignments will be overruled.

[5, 6] The fifth assignment of error is to the action of the court in permitting appellee to testify that his profits were 15 per cent. on the amount of goods sold. Under the facts in this case we do not think this is a proper measure of damages. It is not shown these profits were lost by the refusal to deliver the goods in 72 hours. Under some conditions this may be a proper measure of damages. This assignment, however, shows no injury to have occurred, and, upon looking into the record, we find nothing to convince us that the court allowed this as part of the recovery. The case was tried by the court, and we will not presume the court allowed them, when there is no evidence to show that they were in fact lost, to appellee. There is no assignment to the effect that he did. The judgment is not for as much as he could have allowed under the statute. For the above reason the fifth assignment is overruled.

The sixth and seventh assignments are overruled. The assignments are that it was error to permit the appellee to testify, as shown by the bill of exceptions. The bill of exceptions are to the effect that the court refused to permit the witness to testify and answer certain questions, not that he permitted him to testify as set out in the assignment. The rejection of the evidence, however, was not error, and no such injury to appellant, of which it could complain.

The eighth and ninth assignments, to the action of the court in overruling special exceptions 2 and 3, to the plaintiff's petition, are overruled. We think the petition sufficiently definite. Our views as to the effect of the statute and regulations by the Commission are given in our consideration of the first assignment.

Assignments from 8 to 14 are overruled. These assignments seek to attack the constitutionality of articles 6670 and 6671. The questions here presented have been fully answered by the Supreme Court. Railway Co. v. Hannay, 104 Tex. 603, 142 S. W. 1163. No reversible error having been assigned or pointed out, the case will be affirmed.

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes