QUANAH, A. & P. RY. CO. v. WARREN.
(No. 1241.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 30, 1917.)

1. CARRIERS ⬦174—DELIVERY TO CONNECTING CARRIERS—DEFENSE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 6589, requiring suitable inclosures for freight at stations on penalty of liability for loss of goods, and article 6693, making it the duty of all railroad companies to provide adequate depot buildings, it is no defense to a consignee's action for withholding goods that freight could not have been left at a point at which there was no station without loss, so that evidence that such was the fact was properly excluded.

2. DAMAGES ⬦87(2)—PUNITIVE DAMAGES—NECESSITY OF SHOWING ACTUAL DAMAGE.

The general rule is that punitive damages cannot be awarded unless actual damages are first proved.

3. CARRIERS ⬦186—WITHHOLDING GOODS—PENALTIES—DAMAGES.

Assuming that before a shipper can recover the penalty for failure to maintain a freight depot at which his goods could be delivered, under Vernon's Sayles' Ann. Civ. St. 1914, art. 6671, he must show pecuniary damage, such damage is shown in the interest upon the value of goods shipped and withheld.

4. CARRIERS ⬦181¼ [New, vol. 12 Key-No. Series]—WITHHOLDING GOODS—PENALTIES—DAMAGES.

Vernon's Sayles' Ann. Civ. St. 1914, art. 6671, providing a penalty for failure to maintain proper freight depots, is independent of the common-law right of action for refusing to deliver goods, and the remedy may be pursued without reference to actual damages, and the

common-law rule that where no actual damage results, exemplary damages cannot be recovered does not apply.

5. CARRIERS ⬦171 — ACTIONS — EVIDENCE —ADMISSIBILITY.

Since the shipper is not a party to the waybill made out for the convenience of the carrier, he is not bound by it, and it is not admissible in evidence against him to show the destination of the goods.

6. CARRIERS ⬦185(3)—SHIPMENT OF GOODS— DESTINATION—EVIDENCE—SUFFICIENCY.

Evidence *held* sufficient to establish consignee's contention as to destination of goods shipped.

Appeal from Motley County Court; A. B. Crane, Judge.

Action by C. W. Warren against the Quanah, Acme & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 184 S. W. 232.

G. E. Hamilton, of Matador, and J. P. Marrs, of Quanah, for appellant. T. T. Bouldin, of Matador, for appellee.

HALL, J. Appellee filed this suit to recover the statutory penalty from appellant for refusing to deliver certain goods described in the petition, and the further sum of $20, as loss of profits. It is alleged that the goods were shipped from Dallas, consigned to appellee, destination Matador, Tex.; that in due time they were received by appellant from its connecting carrier and transported to Roaring Springs, where it held said goods, refusing to deliver them at Matador Junction to its connecting carrier, the Motley County Railway, without lawful excuse for such refusal. Appellant answered by general and special exceptions, general denial, and pleaded specially that at the time the shipment sued on moved over its line of road there was no depot, no agent, and no shelter or any accommodations whatever at Matador Junction, whereby freight could be taken care of in less than carload lots if left there by defendant; that the Motley County Railway Company had no rolling stock of its own; that it made only one trip a day to the junction and any freight left there by defendant would have been exposed to the depredations of stock running loose in the pasture where the junction was situated; that it was several miles from any human habitation, and such freight would be exposed to rain and weather and probably stolen; that the shipment in question was small; was mixed with much other local freight in a car, some of which was destined for Roaring Springs, some for Matador, and some for Afton, and it was necessary to work the freight in said car and separate it before delivery could be made and for want of track and shelter facilities at the junction it was necessary to carry said freight on to Roaring Springs, the nearest station to the junction where said car could be worked and the freight

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

in question separated from other freight, and then return it to the junction before it could be delivered to its connecting carrier, the Motley County Railway. A trial without a jury resulted in a judgment for $250, as a penalty.

[1] The first assignment of error is that the court, upon objections of appellee, refused to permit appellant's station agent to testify to facts showing and tending to show that the freight could not have been left at such station without danger of theft, damage, and destruction by animals and the weather. This issue has been discussed several times, and decided adversely to appellant's contention. The laws of this state require all railroad companies to furnish sufficient facilities for handling freights at junction points, and the fact that neither the defendant railroad company nor its connecting carrier, the Motley County Railway Company, failed to furnish such facilities would be no defense to this action. Articles 6589 and 6693, R. S. 1911; Q., A. & P. Ry. Co. v. Jones, 178 S. W. 858; Q., A. & P. Ry. Co. v. Warren, 184 S. W. 232; Q., A. & P. Ry. Co. v. Moore, 189 S. W. 322.

[2] It is contended under the second assignment that the court erred in rendering judgment against appellant for a penalty when there was no recovery for actual damages. The general rule is that punitive damages cannot be awarded unless actual damages are first proven. Appellant insists that, the recovery being based upon a penal statute, it must be strictly construed. Article 6671, Vernon's Sayles' Civil Statutes, provides:

"In case any railroad subject to this chapter shall do, cause to be done or permit to be done any matter, act or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter or thing herein required to be done by it, such railroad shall be liable to the person or persons, firm or corporation injured thereby for the damages sustained in consequence of such violation; and in case said railroad company shall be guilty of extortion or discrimination as by this chapter defined, then, in addition to such damages, such railroad shall pay to the person, firm or corporation injured thereby a penalty of not less than $125.00 nor more than $500.00, to be recovered in any court of competent jurisdiction, in any county into or through which such railroad may run," etc.

Because the article quoted describes the person entitled to sue as the one "injured thereby," and that such injured person, "in addition to such damage," may recover the penalty provided for in the act, it is insisted that appellee was not entitled to recover because the effect of the court's judgment denying him actual damages shows no actual injury, and the words "in addition to such damages" imply that without the recovery of actual damages the penalty cannot be recovered. With reference to the construction of penal statutes, Brown, Justice, in Thompson v. M., K. & T. Ry. Co. of Texas, 103 Tex. 372, 126 S. W. 257, 128 S. W. 109, says:

"The defendant in error invokes the rule that penal statutes must be strictly construed, and the honorable Court of Civil Appeals adopted the suggestion, applying the rule in its extreme rigor to the facts of this case. The rule upon this subject which now prevails, being sustained by the best of authority, is forcibly expressed by Chief Justice Fuller of the United States Supreme Court, in the case of U. S. v. Lacher, 134 U. S. 629, 10 Sup. Ct. 627, 33 L. Ed. 1080, by the following quotation from Mr. Sedgwick, on Statutory and Constitutional Law: ' "The rule that statutes of this class are to be construed strictly is far from being a rigid or unbending one, or rather it has, in modern times, been so modified and explained away as to mean little more than that penal provisions, like all others, are to be fairly construed according to the legislative intent as expressed in the enactment; the courts refusing, on the one hand, to extend the punishment to cases which are not clearly embraced in them, and, on the other, equally refusing, by any mere verbal nicety, forced construction, or equitable interpretation, to exonerate parties plainly within their scope." This passage is quoted by Bramwell in Attorney General v. Sillem, 2 H. & C. 532, as one "in which good sense, force, and propriety of language are equally conspicuous, and which is amply borne out by the authorities, English and American, which he cites." ' * * * In construing penal statutes the proper course is to search out and to follow the true intent of the Legislature, and to adopt that sense which harmonizes best with the context, and promotes, in the fullest manner, the apparent policy and objects of the Legislature."

The language above quoted was used by Judge Brown in construing article 4575, Revised Statutes of 1895, which is the same as article 6671. The legislative intent in the enactment of penalties against carriers is clearly expressed by Hoke, Justice, in Summers v. Southern Railway Co., 138 N. C. 295, 50 S. E. 715, in the following words:

"These penalties are not given solely on the idea of making a pecuniary compensation to the person injured, but usually for the more important purpose of enforcing the performance of the duty required by public policy or positive statutory enactment. As said in Grocery Co. v. Railway, 136 N. C. 404, 48 S. E. 801: 'The object in providing a penalty is clearly to compel the common carrier to perform its duty to the public.' They are sometimes enforceable only by the state, sometimes they are given to any one who shall sue for them, and again the recovery is confined, as in this instance, to the party aggrieved, the person having a peculiar and special interest in enforcing the performance of the duty. In giving the penalty to the party aggrieved, the statute simply designates the person who shall have a right to sue, and restricts it to him who, by the contract, has acquired the right to demand that the service be rendered. The party aggrieved, in statutes of this character, is one whose legal right is denied, and the penalty is enforceable, independent of pecuniary injury. Switzler v. Rodman, 48 Mo. 197; Qualls v. Sayles, 18 Tex. Civ. App. 400, 45 S. W. 839; Grocery Co. v. Railway, supra."

[3, 4] We are not able to determine why the trial judge did not award actual damages, at least to the extent of lawful interest upon the value of the goods shipped. This was certainly recoverable, and if pecuniary injury is necessary to support a suit for the recovery of the penalty, it is present in this case. In Texas Central Railroad Co. v.

Hannay-Frerichs & Co., 104 Tex. 603, 142 S. W. 1165, Judge Brown, said in construing article 4496, R. S. 1895 (article 6554, V. S. C. St.):

"It is insisted that the language of article 4496, Revised Statutes 1895, implies that other damages had accrued, and that the 5 per cent. was to be given only 'in addition' to other damages. We do not agree to that construction, but, if correct, other damages did accrue by reason of the delay; that is, the deprivation of the use of the money invested. The language was used to show that the 5 per cent. was not intended to exclude other damages for delay."

"Statutes which subject carriers to a penalty for failure to transport goods within a designated time do not in any way affect the carrier's common-law duty to transport within a reasonable time, nor its consequent common-law liability for failure to perform such duty, and they have no application to an action to enforce such liability." 10 C. J. P. 285, § 405, and note.

In our opinion, the statute providing for the recovery of a penalty to enforce the duty which the carrier owes to the public is independent of the common-law right of action for damages for refusing to deliver goods; and the remedy may be pursued without reference to any actual damages or pecuniary interest sustained by the consignee or the shipper of the goods in question, and the common-law rule that where no actual damages result exemplary damages cannot be recovered has no application. The Thompson Case, supra, was one where the appellant sued to recover the penalty provided by statute against the carrier for changing the route designated by him in the shipment of certain lumber. It appears that Thompson preferred to have his lumber shipped over one route; that the appellee arbitrarily and in violation of his directions changed the routing. It seems that the rate between the initial point and the destination over the various routes was the same, and it appears that there was very little difference in mileage. Judge Brown states that Thompson had the undoubted right in shipping his cars of lumber to designate the route by which they should be carried by the different railroads over which they were destined to pass, but it appears that no measure of damages for the violation of such right was announced, nor did Thompson endeavor to show any pecuniary injury. Nevertheless he was adjudged to be entitled to recover.

[5, 6] Under the third assignment appellant insists that the evidence shows that the shipment of freight was consigned to plaintiff at Roaring Springs, and not to him at Matador. The bill of lading was never introduced in evidence. It appears that appellant's station agent at Roaring Springs sent appellee a written notice, in which it is stated that the freight in question had been received at that station, consigned to appellee at Matador, and about the same time informed appellee over the telephone that he had such goods on hand consigned to appellee at Matador. The agent testified that he did not remember sending any such written notice to appellee and did not recollect telling him over the phone that the goods were consigned to him at Matador. The court permitted a waybill of the goods made at Dallas to be introduced in evidence to contradict appellee's contention that Matador was the destination named in the bill of lading. The waybill was made out by and for the use of the carriers and their employés in handling the freight in transit, appellee was not a party to it, and was not bound by any recitals of facts shown by it. It should not have been admitted in evidence. Granting that it was properly admitted, the result was to create a conflict in the testimony, and the evidence is sufficient to support the court's finding that the goods were consigned to appellee at Matador. It appears that the notice sent by appellant's station agent at Roaring Springs to appellee informed him that there was some freight consigned to him at Matador being held at Roaring Springs, but owing to a dispute between appellant and the Motely County Railway Company over a division of freight, appellee's shipment was being held until the difference between the two railway companies should be settled. As decided by this court, in the cases first cited in this opinion, appellant was not warranted in refusing to deliver the freight to its connecting carrier upon the ground stated in the notice.

The judgment is affirmed.