## H. E. BUTT GROCERY CO. et al. v. SHEPPARD et al.

### No. 8983.

Court of Civil Appeals of Texas. Austin.

Feb. 7, 1940.

Rehearing Denied March 13, 1940.

Greenwood, Moody & Robertson and Herman Jones, all of Austin, for appellants.

Gerald C. Mann, Atty. Gen., and W. F. Moore, Billy Goldberg, and Cecil C. Rotsch, Asst. Attys. Gen., for appellees.

BAUGH, Justice.

Suit was filed by H. E. Butt Grocery Company and the SouthWest Texas Grocery Corporation, separate and distinct private corporations, against the State Comptroller, the State Treasurer and the Attorney General to recover $1,972 occupation taxes, paid under protest, and exacted by the Comptroller under the provisions of the "Chain Store Tax Statute". Chap. 400, Acts 1st Called Session, 44th Legislature, Vernon's Tex.Pen.Code 1936, art. 1111d, §§ 1–11. The sum involved was an additional tax demanded for the four years prior to and including 1939. In the latter year it was alleged that the plaintiff, H. E. Butt Grocery Company, owned and operated 32 grocery stores with headquarters at Harlingen, Texas; that Southwest Texas Grocery Corporation owned and operated two grocery stores with headquarters at Del Rio, Texas; and that H. E. Butt owned 83% of the stock of the former and 75% of the stock of the latter corporation. The trial court sustained a general demurrer to their petition, the plaintiffs declined to amend and their suit was dismissed; hence this appeal.

Appellants' contention here, and alleged in their petition, is that they are separate and distinct corporations, neither owning any stock in, nor exercising any control over, the other; that they constitute separate entities; and that each owed, under said law, only a tax on the number of stores owned and operated by it. That is, that under the "Chain Store Tax Statute", the H. E. Butt Grocery Company owed a tax on a chain of 32 stores; the Southwest Texas Grocery Corporation owed a tax on a chain of two stores; and that the Comptroller could not disregard the separate legal entities of the two corporations, and exact a tax of the two corporations, treating them as a single unit of 34 stores and computing the tax accordingly, notwithstanding the ownership of the majority of the stock in each by H. E. Butt.

Appellants cite numerous authorities and discuss at length the nature, character, powers and liabilities of a corporation as a legal entity, separate and distinct from its individual stockholders, and insist that in assessing and collecting the tax in question, the Comptroller ignored these distinct legal entities.

The general characteristics of a corporation as a distinct entity separate and apart from its stockholders, regardless of how and by whom its stock is held, are well settled and uniformly recognized. We refer, without discussing these distinctions here, to 10 Tex.Jur. Sec. 45, p. 639; 13 Am.Jur. Sec. 6, p. 157; and 18 C.J.S., Corporations, § 4, p. 368, for a full treatment of this subject.

Appellants also contend that, as applied to the fact situation here presented, the legislative intent, under the provisions of the law in question, is so ambiguous, obscure and uncertain, as to make applicable to them, the rule of strict construction thereof against the State and of liberal construction in favor of the tax payer. And that when so construed the additional tax here involved was and is not due the State. The rule asserted is well recognized. See 40 Tex.Jur., Sec. 45, p. 68 and cases cited. It is also to be noted that said Act is a penal statute (see Vernon's Texas Statutes, 1936, Art. 1111d, Penal Code), which generally must likewise be strictly construed. 39 Tex.Jur., Sec. 146, p. 276. But if the true intent of the Legislature is clearly reflected by the provisions of the Statute, it should be so construed as to carry that intent into effect. Thompson v. Missouri, K. & T. Ry. Co., 103 Tex. 372, 126 S.W. 257; 128 S.W. 109.

Sec. 5 of said Act requires the license fees therein prescribed to be paid by *every* person or "corporation * * * operating * * * one or more stores * * * within this State, under the same general management, or ownership * * *."

Sec. 6 provides that the "Act shall be construed to apply to *every* person [or] * * * corporation * * * which is controlled or held with others by majority stock ownership or ultimately controlled or directed by one management or association of ultimate management * * *."

Sec. 6 was manifestly intended to prevent large chains of stores, which receive the benefits flowing from such system (considered and enumerated in part by the U. S. Supreme Court in State Board of Tax Com'rs v. Jackson, 283 U.S. 527, 51 S.Ct. 540, 75 L.Ed. 1248, 73 A.L.R. 1464, 75 A.L.R. 1536, and in Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896, sustaining the validity of the Act as constituting a reasonable classification), from circumventing the tax burdens imposed under the Act, by organizing separate corporations to operate them, the capital stock of which, or a majority of it, being owned by a parent corporation or holding company, or by an individual or association of individuals. Thus through a common management or control over a number of individual units or corporations the clear purpose of the law would be defeated. While in the instant case no such condition prevailed, in that appellant corporations were organized and were operating stores separately before the Act was passed, the principle is the same, the benefits the same, and the result would be the same. This exact provision of the chain store tax law of Michigan was held valid in Smith Co. v. Fitzgerald, 270 Mich. 659, 259 N.W. 352. A similar provision of the West Virginia Statute was upheld in Gulf Refining Co. v. Fox, D.C., 11 F.Supp. 425, wherein the Court in effect held that majority stock ownership of such corporations was tantamount to a "control" thereof within the meaning of such law. This holding would apply with equal force whether such majority stock ownership be lodged in an individual or in another corporation.

It is true that the Texas Act does not undertake, in instances of common ownership, or control through majority stock

ownership in two or more corporations, to specifically designate who must pay such tax, whether the owner of the majority of such stock, or the corporations themselves, nor if to be paid by the latter, in what proportion it shall be allocated to such respective corporations. It merely makes "The provisions of this Act * * *" apply to every such "person, * * * firm, corporation," etc.

Manifestly the statute could have easily been made more specific in this regard. We conceive, however, that all of the contentions here made by appellants, whether actually raised in the attack upon the validity of the Act or not, were necessarily involved in the attacks made upon its constitutionality in Hurt v. Cooper, supra, which followed the decisions in the Jackson and Fitzgerald cases, supra, and Liggett Co. v. Lee, 288 U.S. 517, 53 S.Ct. 481, 77 L.Ed. 929, 85 A.L.R. 699; in all of which cases the validity thereof, notwithstanding such indefiniteness in the respects stated, was sustained. The ownership by Butt of 83% of the stock in one corporation, and of 75% of the stock in the other, gave him such unified control of both corporations, through such stock ownership, as to bring the stores owned and controlled by such separate corporations under the provisions of the Act; and required that they be treated as one chain for tax purposes. The failure of the Legislature to specifically provide how and by whom the tax so imposed should be paid, should not, in view of the decisions upholding the Act as valid, be permitted to defeat its provisions. To sustain appellants contentions, and tax the two corporations involved only on the basis of the stores owned and operated by each, thus ignoring the majority stock ownership provision of Sec. 6, would in effect nullify Sec. 6, and so defeat the very purposes it was enacted to accomplish; and would, in effect, be in conflict with the decision in Hurt v. Cooper, supra, holding such provision valid. While we are here confronted with the application of the act to a factual situation presented, rendered difficult because of its indefiniteness, we are not at liberty to so apply it as to render it nugatory in practice.

The Act in question clearly encompassed within its terms the fact situation here presented. The additional tax was demanded by the Comptroller on the finding by him that the 34 stores constituted under said Act but a single chain under the control of H. E. Butt through his majority stock ownership of the two corporations operating them. It was paid under protest. Only the two corporations have sued. It was not alleged by whom nor in what proportion the additional tax was paid. If, as we conclude, these corporations, regardless of number, are due the tax prescribed by the Act, because of unified, control through majority stock ownership, the State is not seriously concerned with how, as between themselves, they distribute that tax burden. That is a matter that they can adjust between themselves perforce the same unified majority stock ownership, which brings them within the terms of the Act itself.

The trial court did not err, therefore, in sustaining the demurrer to the appellants petition, and its judgment will be affirmed.

Affirmed.