

# THE ATTORNEY GENERAL OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

August 14, 1969

Sustained by
Calvert v. Thompson
472 SW2d 311 1971

Honorable Robert S. Calvert
Comptroller of Public Accounts
State Capitol Building
Austin, Texas

Opinion No. M- 449

Re: House Bill No. 579, Chapter 497, Acts of the 61st Legislature, page 1606 (Title 122A, Taxation-General, V.C.S.) regarding certain coin-operated machines.

Dear Mr. Calvert:

Your opinion request dated July 28, 1969, poses six questions that have arisen under new Article 13.17, Title 122A, Taxation-General, Vernon's Civil Statutes, which was enacted by the 61st Legislature and which becomes effective September 1, 1969.

Your first question inquires as to whether a business licensed under Article 13.17 is required to file with the Comptroller and the Consumer Credit Commissioner a copy of "any personal loans, notes, mortgages and any other monetary benefits extended to a person engaged in selling or serving alcoholic beverages for on-premises consumption." The following portions of the Article have relevance to this question, to-wit:

"Section 2. DEFINITIONS. . . .

* * *

"(2) 'financial interest' includes any legal or equitable interest, and specifically includes the ownership of shares or bonds of a corporation.

* * *

"Section 27. . . .

"(1) <u>It shall be unlawful for a person who has a financial interest in a business</u>

> required to be licensed by this Article to knowingly have a financial interest in a business engaged in selling or serving alcoholic beverages for on-premises consumption unless otherwise permitted in this Article. No bona fide financial interest or commitment in existence prior to September 1, 1969, shall be deemed a violation of this Article, but no such interest or commitment may be renewed or altered after September 1, 1969, without the written approval of the Comptroller, provided that this prohibition shall not apply if the business engaged in selling or serving alcoholic beverages be a corporation whose securities are registered under the laws of the United States or the State of Texas. (Emphasis added.)
>
> * * *
>
> "(6) Any person required to be licensed by this Article may make an extension of credit to a lessee or a bailee of a music or skill or pleasure coin-operated machine for business or commercial purposes when the following terms and conditions have been met and the following duties and obligations satisfactorily assumed and discharged.
>
> * * *
>
> "(7) Any person required to be licensed by this Article who co-signs, guarantees, or becomes surety for an extension of credit or loan of anything of value to any person engaged in selling or serving alcoholic beverages for on-premises consumption or to any person who he has reason to believe is about to be engaged in selling or serving alcoholic beverages for on-premises consumption, shall file with the Comptroller and the Consumer Credit Commissioner, a copy of all documents related to the transaction."

It is our opinion that a person who lends money to be used in a liquor business or who takes a mortgage on any property owned by or used in the liquor business has thereby become financially interested in the liquor business within the spirit and contemplation of the Act.

In Nevada Tax Commission v. Hicks, 310 P.2d 852 (Nev. Sup. 1957), the court construed the terms "directly or indirectly interested in the business" and "financially participating in the business" as contained in the Gambling Control Act of the State of Nevada and commission rules thereunder. Section 10c of the Gambling Control Act provided that applications for gambling licenses shall include the names of all persons directly or indirectly interested in the business and the nature of such business. Commission Rule II 1 which was promulgated under such Gambling Control Act provided that with regard to the revocation or suspension of licenses the omission of the name of any person financially participating in the business from the application should be deemed pertinent.

One of the questions in the case was whether the lending of money to a hotel corporation for the purpose of constructing a hotel gave the lender a "financially participating interest" in the hotel corporation. The court disposed of that specific question thusly:

> "It is our view that the language 'financially participating interest' should not be as narrowly defined as respondents would have it but may reasonably be construed to include the investment which results when money is lent for the purpose of financing an enterprise. Otherwise such financial interests as those represented by the corporate bonds of an incorporated licensee would be excluded. While these do not have the potentially hazardous effect upon the public welfare which direct operational control would have, still they can be said to be of material concern to the commission."

Thus, except for the provisions of paragraph (6) of Section 27, all those barred under Section 27(1) from having a financial interest in a business where alcoholic beverages are sold or served for on-premises consumption are prohibited from making loans to or accepting mortgages from such an alcoholic beverage business. However, it is our opinion that paragraph (6) provides a means whereby a person otherwise prohibited from making such loans can extend credit to a lessee or bailee of a coin-operated machine, even though he be engaged in the on-premises alcoholic business, provided that all rules and regulations set forth in paragraph (6), including subparagraphs (a) through (f), are strictly followed.

Section 27(1) provides an exception if the one engaged in the sale of alcoholic beverages for on-premises consumption is a corporation whose securities are registered under the laws of the United States or this State. However, for reasons below given in answer to your second question, we are also of the opinion that if the licensee extends credit to a corporation of the type described in the exception, the licensee must also follow all provisions of said paragraph (6) and its subparagraphs (a) through (f) before it can extend credit for business or commercial purposes to a lessee or bailee of a coin-operated machine. In brief, a licensee under the Act cannot make a loan to anyone save an excepted corporation engaged in the on-premises alcoholic beverage business except under paragraph (6), and loans to an excepted corporation under Section 27(1) can be made if the corporation is a lessee or bailee of a machine only under the terms of the provisions of said paragraph (6).

We think that paragraph (7) above-quoted is self-explanatory. It provides that a person licensed by the Act can co-sign, guarantee or become surety for the extension of credit to a person engaged in the liquor business so long as a copy of all documents related to the transaction are filed with the Comptroller and the Consumer Credit Commissioner.

Your second question inquires as to whether a business licensed under Article 13.17 will be required to file a copy of any personal loans, notes, mortgages and any other monetary benefit extended to a person who is not engaged in selling or serving alcoholic beverages for on-premises consumption. Except for the provisions of paragraph (6) of Section 27 of the Act, there are no prohibitions against a coin-operated business becoming interested in another business where alcoholic beverages are not sold for on-premises consumption. However, under the provisions of said paragraph (6) which extends credit to any lessee or bailee of a coin-operated machine (whether such lessee or bailee is in the liquor business or not) must follow all of the rules and regulations set forth in said paragraph (6) and subparagraphs (a) through (f), both inclusive, of said paragraph (6). Since the Legislature has provided the means, methods and conditions under which a licensed business may make a loan to a lessee or bailee of a coin-operated machine, such loans cannot otherwise be made. Where a statute prescribes a method under which an Act can be accomplished, no other method can be implied and all other methods are excluded. Creager v. Hidalgo County

Water Improvement District No. 4, 283 S.W. 151 (Tex.Comm. App. 1926); Vitopil v. Ware, 280 S.W.2d 378 (Tex.Civ.App. 1955, error ref. n.r.e.); 53 Tex.Jur.2d 205, Statutes, Sec. 141.

Your third question reads as follows:

"Can a person own and operate his own coin machine in his business where alcoholic beverages are sold and consumed on the premises under Section 27(1), under this act?"

In Attorney General's Opinion M-437 recently issued, this office held that a person who owned and operated his own coin-operated machine in his own place of business was engaged in a business which is required to be licensed under this Act. Therefore, under the plain provisions of Section 27(1) of the Act, one who is engaged in the business of selling alcoholic beverages for on-premises consumption is absolutely barred from owning and operating a coin-operated machine in his liquor business. Exceptions to this rule are granted in the "grandfather clause" which is contained in said Section 27(1) and which is self-explanatory. Section 27(1) also grants an exemption to corporations whose securities are registered under the laws of the United States or Texas. Paragraph (2) of Section 27 also grants an exemption in that one who has a financial interest in a business required to be licensed can also have an interest in real property on which there is located a business engaged in selling or serving alcoholic beverages for on-premises consumption.

Your fourth question is as follows:

"Section 26 requires that a written contract be filed with the Comptroller as to all agreements with licensee and business where a coin-operated machine is placed. Would a copy of a blanket contract suffice or would the licensee be required to file a copy of each contract signed and sworn to by both parties?"

The applicable portions of Section 26 are as follows:

"Section 26. UNAUTHORIZED CONTRACTS PROHIBITED; PENALTY.

"(1) No person licensed under this Article may place or operate a music or skill or pleasure

coin-operated machine in an establishment where alcoholic beverages are sold or served for on-premises consumption except by written contract. The contract must include all provisions of the agreement between the parties and a statement sworn to by both parties that there are no other understandings or agreements between the parties.

"(2) The licensee shall

"(a) promptly file a copy of the contract with the Comptroller, unless on terms previously filed with the Comptroller.

"(b) furnish a copy to the manager of the establishment where the machine is placed; and

"(c) retain a copy at his principal place of business.

"(3) The manager of the establishment shall retain his copy of the contract on his premises."

With the words "unless on terms previously filed with the Comptroller," as contained in paragraph (2)(a), the Legislature apparently undertook to provide an exception to the rule that a copy of each contract must be filed with the Comptroller. These words are ambiguous, and they must, if possible, be construed in such a fashion as will ascribe a reasonable and fair meaning within the legislative intent, as ascertained from a view of the statute as a whole. 53 Tex.Jur.2d 180-189, Statutes, Secs. 125-126.

In assigning some efficacy to the exemption provision and at the same time staying within the manifest spirit of the policing provisions of the Act, we are of the opinion that a fully executed copy of each and every contract must be filed with the Comptroller. However, applicable terms of the contract may be incorporated and made a part of the contract by express reference to another contract or other instrument which sets forth certain contractual terms and provisions and which is definitely identified in the present contract and which has been previously filed with the Comptroller. Such a contract so incorporating certain terms by reference must also affirm that all parties have read such terms and provisions and understand them. Thus, a copy of a "blanket contract" will suffice only to the extent above-outlined.

Your fifth question inquires as to whether the Act requires that a license be procured at each place of business where a coin-operated machine is placed and operated.

We are of the opinion that the Act requires a license on the distinctive business of dealing in coin-operated music, skill or pleasure machines. This conclusion is manifest from many references to the Article, samples of which are as follows:

"Section 8. LICENSE REQUIRED; PENALTY; EXCEPTIONS.

"(1) No person shall engage in business to manufacture, own, buy, sell, or rent, lease, trade, lend, or furnish to another, or repair, maintain, service, transport within the state, store, or import, a music coin-operated machine or a skill or pleasure coin-operated machine without a license issued under this Article.

* * *

"Section 11. DISPLAY; PENALTY.

"(1) A person licensed to do business under this Article shall prominently display his current license certificate at his place of business at all times.

* * *

"Section 15. TYPES OF LICENSES.

"(1) A person who wishes to engage in certain business dealing with music coin-operated machines or skill or pleasure coin-operated machines shall apply for a general business license, or an import license, or both.

"(2) A general business licensee may engage in business to manufacture, own, buy, sell, rent, lease, trade, repair, maintain, service, transport or exhibit within the state, and store music and skill or pleasure coin-operated machines.

"(3) An import licensee may engage in business to import, transport, own, buy, repair, sell, and deliver, music and skill or pleasure coin-operated machines, for sale and delivery within this State."

The provisions of Section 12 dealing with the application for a license are also relevant in that the application must

show the nature of the business entity to be licensed and must show the location of each coin-operated machine which is owned, possessed or controlled by the licensee. It is further relevant that while Article 13.02 of Chapter 13, Title 122A, Taxation-General, V.C.S., distinctly provides for a tax of $15.00 per year on each coin-operated machine, Article 13.17 deals with the licensing of a business which deals in such machines.

The only difficulty in interpretation with regard to this question is found in the provisions of Sections 9 and 16 of Article 13.17. Section 9(2) provides that a license shall be effective for a single place of business. Section 16(1) provides that an annual license fee of $300.00 shall be paid for each "type and place of business licensed under this Article."

In McCauley v. Hobbs Trailers, 357 S.W.2d 494, (Tex. Civ.App. 1962, no writ) the court construed Section 2 of Article 6165a, V.C.S., which defines a loan broker as "a person, firm, or corporation . . . who pursues the business of lending money, . . . and taking for security for the payment of such loans . . . an assignment of wages. . . ." The court held that the term "business" connoted a distinctive business, i.e., an occupation or employment habitually engaged in for the purpose of profit or improvement.

The requirement of a license to engage in a particular business or occupation whether it is called a license tax, an occupation tax, a privilege tax, or an excise tax, is not a tax on property. 53 C.J.S. 457-458, Licenses, Sec. 3; Producers Oil Company v. Stevens, 99 S.W. 157 (Tex.Civ.App. 1907, error ref.). Rather, such a business licensing requirement exacts a tax or fee for the privilege of carrying on a business or occupation. 53 C.J.S. 446-447, Licenses, Sec. 1; 36 Tex.Jur.2d 618, Licenses, Sec. 28. Statutes imposing licenses and business taxes are to be construed liberally in favor of the citizen and strictly against the government, and every doubt as to construction must be resolved in favor of the one against whom the enactment is sought to be applied. H. E. Butt Grocery Company v. Shepherd, 137 S.W.2d 823 (Tex.Civ.App. 1940, error ref.); 53 C.J.S. 495, Licenses, Sec. 13. Based on an interpretation of the spirit and intent of the statute as gathered from its four corners, we are of the opinion that this Licensing Act is aimed at the distinctive business of dealing in coin-operated machines and that a license must be procured for each place

where that distinctive and identifiable business, as such, is carried on. Thus, each person in the business is required to have at least one license before he can engage in business at all. The first license is effective as to a single place of business, so that if a person has any other establishment in which he maintains any of the business activities, as contemplated by Section 8(1) of Article 13.17, such as a warehouse, repair shop, store, etc., he is required to have a license for each such establishment or "place of business." Goldstein v. State Revenue Commission, 178 S.E. 164 (Ga.Sup. 1935); 53 C.J.S. 551, Licenses, Sec. 24. Take for example, a person who is in the basic, overall business of owning coin machines and placing them on various locations for operation. If that person had an office and warehouse in Dallas and another office and warehouse in Houston, he would need a license for his Dallas location and another license for his Houston location. If the same person had an office, or repair shop, and a warehouse in separate locations in each of the two cities, he would need a total of six licenses. However, he would not necessarily need a separate license for each place where he places a machine on location. A single machine on location is a part of his business, but the Act does not clearly require a license for a part or portion of his business. It merely requires a license for each place of the overall, identifiable business or occupation which was intended to be subject to being licensed.

We do not consider your sixth question because it is conditioned on an affirmative answer to question No. 5.

## SUMMARY

Under Article 13.17 of Title 122A, Taxation-General, Vernon's Civil Statutes, House Bill No. 579, Chapter 497, Acts of the 61st Legislature, page 1606, a licensed business otherwise prohibited from having a financial interest in a business where alcoholic beverages are sold for on-premises consumption may nevertheless make extensions of credit to lessees and bailees of coin-operated machines provided that he must strictly comply with the provisions of paragraph (6) of Section 27 of the Article. Loans to corporations of the type in which the licensee is not prohibited from having a financial interest must also be made under said paragraph (6) if such

corporation is a lessee or bailee of such machines. Extensions of credit by a licensed business to a lessee or bailee of a coin-operated machine who is not engaged in a business where alcoholic beverages are sold for on-premises consumption must also strictly comply with the provisions of said Section 27(6). A person cannot own and operate his own coin-operated machines in his own place of business where alcoholic beverages are sold for on-premises consumption unless he comes within the exceptions granted in the "grandfather clause" of Section 27(1) of the Act, or unless he is the type of corporation which is excepted under Section 27(1), or unless he comes within the exception provided for the ownership of interest in real estate as set forth in Section 27(2). Under Section 26 of the Article, a fully executed copy of each written contract must be filed with the Comptroller, provided however that terms and provisions of the contract may be incorporated and made a part thereof by reference to another contract or written instrument containing such terms, provided that such referred-to instrument must have theretofore been filed with the Comptroller and must be definitely identified in the present contract, and the contract must affirm that all parties have read such referred-to terms and understand them. It is required that a license be procured for the distinctive business which is required to be licensed, and he must have a separate license for each place such as an office, warehouse, repair shop, store, etc., where that distinctive business is carried on; however, a licensee under the Act is not necessarily required to procure a separate license for each location where one of his machines is placed on location, unless that licensee carries on his distinctive business also at such location.

Very truly yours,

Crawford C. Martin

CRAWFORD C. MARTIN
Attorney General of Texas

AW:dc

Prepared by Alfred Walker
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Vice-Chairman
Roger Tyler
Houghton Brumlee, Jr.
John Banks
Tom Bullington

W. V. Geppert
Staff Legal Assistant

Hawthorne Phillips
Executive Assistant